719 So.2d 1220 (1998)
STATE of Florida, Appellant/Cross-Appellee,
v.
Hubert McCORMICK and Jerome Mitchell, Appellees/Cross-Appellants.
No. 97-1305.
District Court of Appeal of Florida, Fifth District.
September 25, 1998.
Rehearing Denied November 9, 1998.
*1221 Robert A. Butterworth, Attorney General, Tallahassee, and Roberta J. Tylke, Assistant Attorney General, Daytona Beach, for Appellant/Cross-Appellee.
Curtis N. Flajole of Law Firm of Daniel S. Ciener, Merritt Island, for Appellees/Cross-Appellants.
GOSHORN, Judge.
The State appeals an order suppressing wiretap evidence against Appellees Hubert McCormick and Jerome Mitchell. We reverse.

THE FACTS
Detective Ronald King of the Melbourne Police Department filed an application and affidavit seeking authorization to intercept and record oral and wire communications under subsections 934.07 and 934.09(1)(a), Florida Statutes. The application sought authorization "for the interception and recording of wire or oral communications on telephone number (407)698-7272, which is a cellular telephone, mobile in nature, and subscribed to within Brevard County, Florida." The application also identified the telephone number by the name of its subscriber, Sarah Tillery, and listed the targets of the investigation as William Haws of Melbourne and Robert Tillery (Sarah's husband) of Merritt Island. Elsewhere the application states that Robert and Sarah Tillery at one point lived in Melbourne. The application alleged that the cellular telephone was being used by Robert Tillery to arrange drug deals.
Pursuant to Detective King's affidavit and application, the circuit court entered an order authorizing interception and recording of conversations on the cellular telephone. On authority of that order, approximately 1400 conversations were intercepted and recorded by the Melbourne Police Department, leading to cannabis trafficking and conspiracy charges being filed against Haws, the Tillerys, and Appellees. Appellees moved to suppress the wiretap evidence on numerous grounds. The lower court found merit in Appellees' argument that Detective King, a Melbourne police officer, lacked jurisdiction to seek, receive, and execute the wiretap authorization order, and suppressed the evidence. It is this suppression order which the State now appeals.

THE LAW
As an initial matter, the State argues that the court erroneously found the wiretap authorization order overbroad in its description of the telephone because it lacked an address for the residence of the Tillerys. To some extent this issue is intertwined with and subsumed within the more general jurisdictional issue, and Appellees seem to concede that the order did not hold the wiretap authorization invalid for lack of a residence address. In any event, we find that the State is correct that the order was not overbroad merely because it lacked an address for the cellular telephone subscribers. The order sufficiently identified the mobile, cellular telephone by its unique telephone number. See State v. Buffa, 347 So.2d 688, 688 (Fla. 4th DCA 1977) (reversing order granting motion to suppress despite incorrect number in defendant's street address in wiretap order; "All of the pertinent documents correctly identified the telephone number and the person in whose name it was listed, the Defendant herein. These descriptions were sufficient to lead a reasonable person to the proper subject of the wire interception."); see also State v. Tango, 287 N.J.Super. 416, 671 A.2d 186, 188 (App.Div.1996) (noting that "a cellular phone has no fixed location" and "authorization order specified the required information to the extent practicable in the circumstances, which is all that is required").
In its main point on appeal, the State contends that the trial court erroneously concluded that Detective King, as a Melbourne police officer, lacked the authority to execute the order involving a cellular phone whose subscriber resided in Merritt Island. The parties seem to be in agreement that King's *1222 authority depends on where the "interception" of a phone call is deemed to take place. "Intercept" is defined in the wiretap statute as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 934.02(3), Fla. Stat. (1997). The State notes that no Florida court has ruled on the question of where an "interception" occurs for jurisdictional purposes where a cellular telephone is involved, and further notes that "a cellular telephone is mobile in nature and can be repeatedly carried across various jurisdictional lines."
The State argues, and we agree, that the "interception" of a cellular call occurs both at the location of the tapped telephone and at the site where law enforcement authorities hear and record the call, and therefore the wiretap was proper here where the listening post was located in Melbourne. This is the approach adopted by numerous courts faced with similar jurisdictional issues. See United States v. Ramirez, 112 F.3d 849, 852 (7th Cir.1997) (upholding authority of Wisconsin federal court to issue wiretap order on cellular phone where phone and listening post were in Minnesota; discussing mobility of cellular phone and noting that "interception takes place both where the phone is located (including, we suppose, although we can find no cases, where the receiving phone is located) and where the scanner used to make the interception is located"), cert. denied, ___ U.S. ___, 118 S.Ct. 232, 139 L.Ed.2d 163 (1997); United States v. Rodriguez, 968 F.2d 130, 136 (2d Cir.1992) (upholding wiretap in New York of telephones in New Jersey, noting that "a communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected are first to be heard"); United States v. Burford, 755 F.Supp. 607, 611 (S.D.N.Y.1991) (approving authority of New York federal court to authorize tap of telephones in Brooklyn and Maryland, noting that conversations "began in Maryland and were aurally acquired, or seized, in New York"); Evans v. State, 252 Ga. 312, 314 S.E.2d 421 (1984) (approving authority of Fulton County district attorney to apply, and Fulton Superior Court judge to issue, wiretap warrant on phones outside of county where listening post was within county).
In so holding, we reject Appellees' contention that our interpretation is foreclosed by the decision in State v. Mozo, 655 So.2d 1115, 1117 (Fla.1995), wherein the supreme court stated that under the Florida wiretap statute "[t]he actual `interception' of a communication occurs not where such is ultimately heard or recorded but where the communication originates." In Mozo, the court was addressing the issue of whether a citizen has privacy expectation in a cordless phone conversation. The police had, without a wiretap order, monitored cordless telephone calls from an apartment complex using a scanner. The defendants moved to suppress the evidence obtained via the scanner, claiming a right to privacy to cordless phone conversations in their home. The supreme court held that the defendants did have a privacy right in the conversation and made the statement quoted above regarding the location of "interception" in order to make the point about the conversation occurring in the home.
We agree with the State that Mozo should be limited to its facts; the court was discussing the right to privacy rather than the issue of jurisdiction.[1]But cf. Koch v. Kimball, 710 So.2d 5 (Fla. 2d DCA 1998) (relying on Mozo in holding that interception occurred where communication originated rather than where ultimately heard for purposes of exercising long-arm jurisdiction over Georgia resident who recorded call made from Tampa). Moreover, the Mozo court relied on United States v. Nelson, 837 F.2d 1519, 1527 (11th Cir.1988), where the court stated that "the term `intercept' as it relates to `aural acquisitions' refers to the place where a communication is initially obtained regardless of where the communication is ultimately heard." The Nelson court did not exclude the scanner location from the definition of "interception"; rather, it only held that the origination point was definitely included. Other courts interpreting *1223 Nelson have found it not inconsistent with Rodriguez. See, e.g., United States v. Denman, 100 F.3d 399, 403 (5th Cir.1996) (noting that in Nelson "the court did not rule out the possibility that the initial listening to the recording by the intercepting agent might also be considered part of the interception"), cert. denied, ___ U.S. ___, 117 S.Ct. 1256, 137 L.Ed.2d 336 (1997); accord United States v. Tavarez, 40 F.3d 1136, 1138 n. 1 (10th Cir.1994).
In sum, we find that Detective King had authority to seek and execute the wiretap order since the listening post was located in Melbourne, and therefore the interception of the cellular telephone calls occurred there.[2] We note that this case involves new and evolving areas of both law and technology, and our conclusion here, in accord with that of other courts that have faced this issue, is a logical solution to the problems created by the mobility of cellular telephones and the difficulty in locating them and determining the origination point of cellular phone calls, which would be required under Appellees' proposed standard.
On cross-appeal, Appellees have raised several issues regarding technical compliance with the terms of the wiretap statute and authorization order. However, we find no violation which would alternatively furnish a basis for suppression here. Detective King followed the circuit judge's instructions regarding sealing and custody of the tapes, thus complying with paragraph 934.09(7)(a), Florida Statutes.[3] As to the other cross-appeal issues, we find either no violation warranting suppression or that Appellees have not established the requisite prejudice.
REVERSED AND REMANDED.
W. SHARP and PETERSON, JJ., concur.
NOTES
[1] We also believe it is important to note that the Mozo court was dealing with a cordless telephone that is of limited range and tied to a fixed location as opposed to a cellular telephone with can be transported and used across traditional jurisdictional boundaries.
[2] Although Appellees argue that there was no testimony adduced at the suppression hearing regarding the location of the listening station, there is documentary evidence in the record that the monitoring post was at the narcotics office of the Melbourne Police Department within the City of Melbourne.
[3] This paragraph provides in part: "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his or her directions. Custody of the recordings shall be wherever the judge orders." § 934.09(7)(a), Fla. Stat. (1997).