[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2009
THOMAS K. KAHN
CLERK

_____

No.07-13007

_____

D. C. Docket No. 05-00017-CR-1-MP-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

COREY B. BROWN,
GREGORY J. HALL,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(November 10, 2009)

Before CARNES, FAY and ALARCÓN,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Corey R. Brown and Gregory Hall seek reversal of their convictions following trial by jury. Brown maintains that the district court erred in denying his motion for a severance and in admitting evidence of his prior convictions to prove intent to distribute cocaine and crack cocaine. He also contends that the evidence was insufficient to prove his participation in a drug conspiracy to manufacture, distribute and possess cocaine and crack cocaine, or his possession of a firearm in furtherance of a drug trafficking crime or as a felon.

Hall asserts that there was a material variance between the allegations of conspiracy in the indictment and the evidence produced at trial. He also contends that the district court erred in admitting a copy of an audiotape because it was not properly authenticated. We affirm because we conclude that the district court did not err in rejecting each of these contentions.

**I**

The Government presented evidence at trial that Hall, Brown and their three co-defendants were cocaine and crack cocaine dealers operating a drug marketplace located within a small neighborhood of Alachua, Florida, enclosed by highway 441, county road 235, and Northwest 133rd Terrace, comprising a rectangular shape of approximately a square mile. Within this marketplace, crack cocaine dealers set up shop at various well-known locales known as "Trees," such

as George Bethea's Tree (also known as Big Ike's Tree) and Sammy Lee's Tree. George Bethea's Tree was "just down the street" from Sammy Lee's Tree. Another drug-dealing locale was an elementary school, which was "right next to Sammy's Tree." Corey "Coco" Brown and Milton Brown dealt controlled substances from their mother's house, Ms. Shirley's house, which was one-half mile from the school and the other locales. The drug dealers and their neighbors, friends, and customers socialized by drinking, gambling, and playing cards on the porch of Ms. Shirley's house and under the trees.

Customers would drive up to the Trees' marketplace and look to "score" and "if [the dealers] know you, they'll deal with you." Hall was "normally" around, and, if not, Brown or his brother were available to sell drugs. A parade of witnesses, including Jeffrey Robinson, Marcus Hathcock, Furnell Mitchell Sr., Furnell Mitchell Jr., and Horace Jenkins, testified to buying both from Hall and Brown for resale anything up to a quarter kilogram of cocaine. Twenty-five witnesses testified about their drug-dealing with Hall.

The Trees' marketplace carried on its drug dealing activities between 1997 and 2005. Starting in 2001, the Florida Department of Law Enforcement ("FDLE") began investigating the Trees' marketplace. As part of the investigation, FDLE carried out "controlled buys," where informants wired with recording

3

devices bought drugs from Hall and Brown. The nature of the common enterprise is best demonstrated by an occasion, on August 18, 2004, where police informant Michael James attempted to buy cocaine from a marketplace dealer, Kenji Darling, under Sammy Lee's Tree. Darling, being unable to supply the amount required by his customer, turned to Hall. Hall also did not have the amount of drugs requested by James. After placing a few calls, Hall drove Darling to George Bethea, Hall's supplier. Bethea provided the cocaine to Darling. He resold it at a profit to James. (*Id.* at 9-15, 60-69.) Bethea paid Hall a commission of $80 for his assistance.

The Government made audio and video recordings of this "controlled buy," recording the conversation of James and Darling through a device James wore. FDLE Agent Beth Torres overheard the conversation remotely using the recording device. Agent Torres used recording equipment to put the conversation on tape.

The original audio recording was copied onto a cassette tape the day after the buy. This copy was submitted into evidence as Exhibit 43A. Agent Torres was present during the duplication process, but the copy was made by an unnamed party. The copied tape was not played in order to compare it to the original.[1] The copy was placed into a locked filing cabinet to which only one person had the key. The original was placed into an evidence vault. Agent Torres stated that the

---

[1]Agent Torres testified that she first listened to the copied tape two days before it was played at trial, when it was discovered that the original was damaged.

duplication process sometimes affected the quality of copies. The original audio disk, admitted as Exhibit 43, sustained moisture damage and could not be played.

The copy of the audiotape was played at trial. Agent Torres testified that the conversation heard on the copy reflected the conversation which she monitored on August 18, 2004. She testified that the audio copy was not altered or changed in any way. Though the videotape was also damaged, the first dozen or so words could be heard and these words matched the first dozen or so words on the audio copy.

Hall objected to the admission of the audio copy. After hearing Agent Torres's testimony regarding the audio copy, the district court admitted it into evidence.

Brown was also involved in the buying and reselling of crack cocaine in large quantities to various individuals. For example, Bethea supplied him with approximately 21 grams of cocaine every two weeks for eight months. Another witness, Jeffrey Robinson, testified that he purchased cocaine from Brown, Milton Brown, and Hall on various occasions prior to 2002. Robinson broke the cocaine down into smaller quantities and resold it. The record shows that several other persons sold crack and powder cocaine to Brown. George Mack testified that Brown sold him cocaine.

Jenita Washington made controlled buys from Brown at his house on January 13, 2005, and January 21, 2005. These buys were tape recorded. The sales involved $300 and $500 in exchange for 1.7 and 4.6 grams of cocaine.

Agent Torres testified that she observed a video tape of Brown conducting a drug deal at his residence on January 28, 2005, prior to the execution of a search warrant.

The FDLE's investigation led to the execution of a search warrant on Ms. Shirley's house on January 28, 2005. The officers found drug paraphernalia, including containers with cocaine residue, about 25 grams of cocaine, and seven firearms. Brown, Hall and three co-defendants were subsequently arrested and indicted.

Before trial, Brown sought to sever his trial from all defendants on the ground that he would be unable to cross-examine co-defendants if their confessions were used against him. The district court denied the motion. At trial, Brown also objected to the admission of his prior convictions. The district court overruled his objection.

The jury convicted Brown of conspiracy to distribute and possess with intent to distribute more than 5 kilograms of crack cocaine or more than 50 grams of cocaine base between August 13, 1997 and January 28, 2005 in violation of 21

6

U.S.C. §§ 841(b)(1)(A)(iii) and 846; distributing cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(B)(iii) and 841(b)(1)(C); possession of more than 5 grams of crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); possession of a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e); and, possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(e)(1)(A)(I).

Hall was convicted of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii) and 846, and distribution of cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(B)(iii) and 841(b)(1)(C) as alleged in Counts One and Two. He was acquitted of Count Three, which alleged distribution of cocaine base, on a different date.

Three co-defendants, Robinson, Milton Brown, and Michael McLeod pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 50 grams of a mixture and substance containing cocaine base and more than 500 grams of a mixture and substance containing cocaine.

Hall and Brown have timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**II**

**A**

7

Brown first contends that the trial court erred in denying his motion for a severance of his trial pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 permits a trial court to grant a severance if it appears either party will be prejudiced by a joinder of offenses or defendants.[2] Brown argued before the district court that severance was required because he would not have the opportunity to cross-examine his co-defendants if their confessions were used against him at trial. He relied on *Bruton v. United States*, 391 U.S. 123, 137 (1968) for this contention. In this appeal, however, Brown has presented an entirely different argument. Relying on *Zafiro v. United States,* 506 U.S. 534, 539 (1993), he maintains that "there was overwhelming evidence of [Hall's] wrongdoing which could easily lead the jury to conclude Brown was guilty." (Appellant Brown's Br. 14.) In *Zafiro,* the Supreme Court noted that in some cases severance would be proper because "evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* The Government argues Brown has forfeited this argument by not raising it before the district court. We agree.

---

[2]Rule 14 provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires . . . .

8

"It is the general rule that a federal appellate court does not consider an issue not passed on below." *Singleton v. Wulff,* 428 U.S. 106, 120 (1976); *see also Bliss v. Equitable Life Assur. Soc. of U.S.*, 620 F.2d 65, 70 (5th Cir.1980) (same).[3] Brown's failure to argue before the district court that the denial of his motion for a severance would pose a risk that the jury would consider evidence of Hall's guilty conduct as proof of his own guilt prevented the district court from considering the merits of this question in the first instance. We decline to consider this contention for the first time on appeal.

**B**

Brown also argues that "[t]here was no testimony Hall and Brown conspired to do anything together. There was no testimony that Hall and Brown had any sort of agreement. The United States failed to meet its burden in this regard." (Appellant Brown's Br. 16.) Count One of the superseding indictment alleges that Brown, Hall, Robinson, McLeod, and Milton Brown "did . . . conspire . . . and agree together and with other persons to distribute and possess with intent to distribute controlled substances." The record shows that Brown and Hall were engaged in a conspiracy *with others* to furnish drugs. The fact that there is no

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

evidence that Hall and Brown sold drugs to each other is not dispositive.

"To sustain a conviction for conspiracy to distribute narcotics the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Matthews*, 168 F.3d 1234, 1245 (11th Cir. 1999).

In determining whether the record is sufficient to demonstrate the existence of a conspiracy, this Court considers: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants. *Id*. "Separate transactions are not necessarily separate conspiracies, so long as the conspirators act in concert to further a common goal." *United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004) (citation omitted). If "a defendant's actions facilitated the endeavors of other co-conspirators, or facilitated the venture as a whole," a single conspiracy is established. *Id*. "It is irrelevant that particular conspirators may not have known other conspirators or participated in every stage of the conspiracy . . . ." *United States v. Alred*, 144 F.3d 1405, 1415 (11th Cir. 1998). Thus, the dispositive question is not whether Brown and Hall dealt with each other, but whether each of them participated in the overall conspiracy.

This Court has previously held that a conspiracy exists where, even though

10

individual dealers are shown "to have competed with each other in the sale of drugs and the procurement of customers, their combined efforts produced a haven for the illegal distribution of drugs . . . ." *United States v. Westry*, 524 F.3d 1198, 1213 (11th Cir. 2008). In *Westry,* a group of drug dealers dealt out of three neighboring homes. *Id*. at 1213. This Court held in *Westry* that the defendants were "engaged in a consistent series of smaller transactions that furthered [the conspiracy's] ultimate object of supplying the consumer demand of the market." *Id.* The conspiracy consisted of the "various acts of distribution at these several locations performed by numerous interrelated individuals." *Id*. at 1212. Furthermore, as is well-established in this Circuit, where there are repeated transactions buying and selling large quantities of illegal drugs, that is sufficient evidence that the participants were involved in a conspiracy to distribute those drugs in the market. *United States v. Johnson,* 889 F.2d 1032, 1035-1036 (11th Cir. 1989). In *Matthews*, this Court held that there was a single large scale conspiracy rather than multiple conspiracies where the drug dealers who all dealt on one street were "mutually interested and involved participants . . . in [that] drug market." *Matthews*, 168 F.3d at 1245.

In *Matthews*, the drug dealers operated along Ebeneezer Road, pooling money to buy cocaine and monitoring the police radio to warn one another. *Id.* In

11

*Westry*, dealers dealt out of three adjoining homes in an extended family business that used runners to deliver the various dealers' product to the nearby streets. *Westry*, 524 F.3d at 1212. Here, like the circumstances in *Westry* and *Matthews*, the jury heard evidence that Hall, Brown, and others were operating together in a "farmer's market" of crack cocaine and cocaine base. The "marketplace" is at the heart of the conspiracy because those seeking cocaine would be drawn to a location and not to a particular dealer. The dealers helped each other in order to maintain a steady source of illegal drugs. They sold drugs on credit, for resale, brokered deals for each other, and shared customers and supplies. From this evidence the jury was free to infer that Hall and Brown had a common goal: to deal in cocaine and to provide a marketplace for cocaine, and an overlap of participants. This was a "joint enterprise," i.e., "[a]n undertaking by two or more persons who set out to commit an offense they have conspired to." BLACK'S LAW DICTIONARY 9TH ED., page 914. "It is irrelevant that particular conspirators may not have known other conspirators or participated in every stage of the conspiracy . . . ." *Alred*, 144 F.3d at 1415. Thus, the dispositive question is not whether Brown and Hall dealt with each other, but whether each of them participated in the overall conspiracy. We are persuaded that the evidence is sufficient to demonstrate to a rational trier of fact beyond a reasonable doubt that Hall and Brown were participants in a conspiracy

12

that furthered a common scheme to supply large quantities of drugs in a haven to meet the demand of their customers.

## C

Brown asserts that "there was insufficient evidence that [he] possessed, much less conspired to traffic, more than 5 kilograms of cocaine or 50 grams of crack cocaine," as alleged in Count One. (Appellant Brown's Br. 16.) Again, Brown has failed to support his contention with any citation to the record. The record shows that the prosecution presented evidence that he possessed more than this amount of crack cocaine. Bethea testified that he sold Brown a minimum of 18 grams of crack cocaine once a week for seven to eight months. Based on Bethea's testimony, a rational trier of fact could reasonably infer that Brown had over 500 grams of crack cocaine in his possession. Furthermore, due to the repeated nature of the transactions and the large quantities involved, a rational trier of fact could infer a corresponding conspiracy to distribute the cocaine. *See Johnson,* 889 F.2d at 1035-1036 (holding that while a simple buy and sell transaction is not sufficient for proof of a conspiracy, repeated transactions for large quantities are sufficient to support an inference that the buyer and seller were engaged in a conspiracy).

## D

Brown further maintains that the district court erred by allowing the Government to present evidence of his prior convictions. The district court admitted evidence of the prior convictions for the sale of cocaine, the sale and delivery of a controlled substance, and numerous counts of possession of cocaine because they were probative of an intent to commit the offenses charged in the indictment. Brown argues that his prior convictions were too remote to be probative of intent. Accordingly, he argues that the probative value of this evidence was substantially outweighed by its prejudicial effect. Fed. R. Evid. 404(b). We review a district court's decision to admit evidence pursuant to Rule 404(b) pursuant to the abuse of discretion standard. *See United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (applying abuse of discretion standard to Rule 404(b) admission of extrinsic offense to prove identity or modus operandi).

To determine whether the evidence is more probative than prejudicial, a district court must engage in a "'common sense assessment of all the circumstances surrounding the extrinsic offense,' including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Calderon,* 127 F.3d 1314, 1332 (11th Cir. 1997) (citing *United States v. Beechum*, 582 F.2d 898, 914-15 (5th Cir. 1978)); *see also United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991) (holding that

no bright-line rule could be adopted with respect to temporal remoteness because the issue is very fact-specific). Prior convictions for drug trafficking are considered highly probative of intent to commit current drug trafficking offenses. *See, e.g.*, *United States v. Cardenas*, 895 F.2d 1338, 1343 (11th Cir. 1990) (holding that a prior conviction for transporting cocaine was probative of the intent required for participation in a separate plan to transport cocaine). The drug conspiracy at issue here began in 1997, whereas Brown's convictions began in 1991, only six years prior to the beginning of the conspiracy charged at trial. S*ee United States v. Matthews*, 431 F.3d 1296, 1312 (11th Cir. 2005) (holding that eight years between prior convictions and the beginning of the charged conspiracy was not too remote); *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (affirming admission of fifteen-year-old convictions). The record shows that the prior convictions were properly admitted to prove intent under Rule 404(b).

### E

Brown argues that there was insufficient evidence to demonstrate that he was guilty of being a felon in possession of a firearm and of possession of a firearm in furtherance of drug trafficking. Brown contends that the search of his house did not reveal sufficient circumstantial evidence from the mere proximity of his identification cards and drug paraphernalia to the firearms in question for the

jury to convict him of the firearm counts. Possession of a firearm "may be either actual or constructive." *United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991). The Government can establish constructive possession of a firearm by proving "ownership, dominion, or control over the firearm." *United States v. Ferg*, 504 F.2d 914, 916 (5th Cir. 1974) (internal quotations omitted). To establish possession of a firearm "in furtherance" of a drug trafficking crime, there must be "some nexus between the firearm and the drug selling operation." *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002). "The nexus between the gun and the drug operation can be established by . . . 'accessibility of the firearm, . . . proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.'" *United States v. Ceballos-Torre*s, 218 F.3d 409, 414-15 (5th Cir. 2000).

Seven firearms and ammunition were found in the southeast bedroom and closet of Ms. Shirley's house. This bedroom also contained 12.3 grams of crack cocaine, containers with crack residue, crack pipes, and $1434 in cash. The officers found Brown's Florida identification card and his prison identification card in this bedroom. The proximity of Brown's identification cards to the firearms and the drug paraphernalia was sufficient to persuade a rational trier of fact that Brown was guilty of possession of a firearm in furtherance of a drug

16

trafficking crime and being a felon in possession of a firearm. *United States v. Molina*, 443 F.3d 824, 830 (11th Cir. 2006) (concluding that sufficient evidence existed to support firearms verdicts where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money).

## III

## A

Hall contends that his conviction should be overturned because a material variance existed between the superseding indictment, which alleged a single conspiracy, and the evidence produced at trial. He argues that the evidence presented at trial demonstrated that there were multiple uncharged conspiracies. We disagree. The record shows that Brown and Hall were engaged in a single conspiracy with other persons to distribute and possess with intent to distribute controlled substances.

"We do not reverse convictions because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material *and* [2] substantially prejudiced the defendants." *Alred*, 144 F.3d at 1414 (emphasis added). In determining whether any variance was material, we view the evidence in a light most favorable to the government and inquire whether a reasonable jury could have determined beyond a reasonable doubt that a

17

single conspiracy existed. *United States v. Coy*, 19 F.3d 629, 633 (11th Cir.1994). "[W]e will not disturb the determination of the jury that a single conspiracy exists if supported by substantial evidence." *Alred*, 144 F.3d at 1414 *citing United States v. Calderon,* 127 F.3d 1314, 1327 (11th Cir.1997).

As discussed above, the Government presented overwhelming evidence that Hall conspired with others to create a marketplace to assist each other in supplying drugs for their customers for a protracted period of time. This is sufficient to demonstrate the Hall participated in a single conspiracy. *See Matthews*, 168 F.3d at 1245-46.

**B**

Hall contends that the district court abused its discretion when it allowed the Government to play a copy of an audio tape of a key drug transaction without properly authenticating the tape. Hall argues that there was insufficient authentication because Agent Torres only listened to the copy to confirm it was genuine immediately before giving her testimony, over a year after the recording was made. A district court's ruling on authentication is reviewed for abuse of discretion. *United States v. Sarro*, 742 F.2d 1286, 1292 (11th Cir.1984). The party introducing an audio tape into evidence has the burden of presenting sufficient evidence to show that a recording is an authentic reproduction of a conversation.

*Id.*; *see also United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977) (holding same). In order to authenticate a recording, the Government ordinarily must show "(1)the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant part of the tape; and (4)the identification of the relevant speakers." *Sarro*, 742 F.2d at 1292. If, however, "there is independent evidence of the accuracy of the tape recordings admitted at trial, we shall be extremely reluctant to disturb the trial court's decision even though at the time that decision was made the government had not carried its particularized burden of going forward." *Id.* (quoting *Biggins*, 551 F.2d at 67.) As both *Sarro* and *Biggins* make clear, where the agent laying the foundation can testify he or she heard the original conversation that was being recorded and that it is the same as the one being played at trial, this also provides sufficient evidence of authenticity. *Sarro*, 742 F.2d at 1292; *Biggins*, 551 F.2d at 67. Agent Torres heard the conversation when it occurred over the wire and testified that the audio tape played at trial was authentic. Thus, the trial court did not abuse its discretion in admitting the copy of the audio tape into evidence.

**IV**

**Conclusion**

We conclude that the convictions of Hall and Brown must be affirmed.

19

**AFFIRMED**.