[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12720
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cr-14007-KMM-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK PIERRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 28, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Frank Pierre appeals his convictions and his total sentence of life imprisonment after being found guilty of conspiring to possess with intent to distribute 5 kilograms or more of cocaine (Count 1), and possessing with intent to distribute 500 grams or more of cocaine (Count 5), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pierre was indicted along with several other co-conspirators, including Quentin Dixon and Jean Claudy Polanco. Pierre raises several issues on appeal which we address in turn. After reviewing the record and briefs, we affirm Pierre's conviction and sentence.

I.

Pierre first asserts the Florida state court judge who issued the order to wiretap Pierre's cell phone lacked authority to do so because Pierre resided outside the judge's territorial jurisdiction.[1] Pierre further contends the issuance of the state and federal wiretap orders were improper because the police had other methods of investigation available to them. Consequently, Pierre claims all evidence gathered as a result of the wiretaps should have been suppressed.[2]

---

[1]The issuing judge sat in St. Lucie County, which is part of the Nineteenth Judicial Circuit. Pierre (and the phone) resided in Broward County, which is part of the Seventeenth Judicial Circuit.

[2]In reviewing a denial of a motion to suppress evidence, we review the district court's "findings of fact for clear error and its application of law to those facts *de novo*." *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). We construe all factual findings in the light most favorable to the prevailing party—in this case, the Government. *Id.* at 1236.

A. *Jurisdiction of Issuing Judge*

Under Florida law, upon a proper warrant application, a judge may enter an order authorizing the "interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting, and outside such jurisdiction but within the State of Florida in the case of a mobile interception device authorized by the judge within such jurisdiction." Fla. Stat. § 934.09(3). The Florida Fifth DCA has previously held that "the 'interception' of a cellular call occurs both at the location of the tapped telephone and at the site where law enforcement authorities hear and record the call." *See State v. McCormick*, 719 So. 2d 1220, 1222 (Fla. 5th DCA 1998).[3] In *McCormick*, the court concluded that a law enforcement officer had authority to seek and execute a wiretap order where the listening post was located within the officer's jurisdiction despite the fact the telephone's subscriber resided outside the officer's jurisdiction. *Id.* at 1221, 1223.

Here, despite the fact that Pierre and the phone resided in Broward County, outside the issuing judge's jurisdiction, the listening post was located at all times

[3]Pierre argues *McCormick* conflicts with a Florida Supreme Court case, *State v. Mozo*, 655 So. 2d 1115 (Fla. 1995), which held that an actual interception of a communication occurs where the communication originates. *McCormick* distinguished *Mozo*, specifically noting privacy rights (and not jurisdiction) were at issue in that case. *See McCormick*, 719 So. 2d at 1222 ("*Mozo* should be limited to its facts; the court was discussing the right to privacy, rather than the issue of jurisdiction.").

within St. Lucie County. Accordingly, under *McCormick*, the state judge had jurisdiction to issue the wiretap warrant for Pierre's cell phone. *See* Fla. Stat. § 934.09(3); *McCormick*, 719 So. 2d at 1222.

B. *Wiretap Warrant Application*

Under the federal and Florida wiretap statutes, an application for a wiretap warrant must contain, among other things, a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); Fla. Stat. § 934.09(1)(c).[4] Similarly, a judge may authorize the wiretap if "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); Fla. Stat. § 934.09(3)(c). However, "the statute does not require an initial exhaustion of all conceivable investigatory techniques," but was simply intended "to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) (quotation omitted); *see also Hudson v. State*, 368 So. 2d 899, 902-03 (Fla. 3d DCA1979) (stating the Florida wiretap

---

[4] The relevant provisions of the federal and Florida wiretap statutes are essentially identical. *Compare* Fla. Stat. § 934.09, *with* 18 U.S.C. § 2518.

statute does not require "a comprehensive exhaustion of all possible techniques").

Thus, the affidavit accompanying the application does not need to recite "every possible line of inquiry" in the investigation, but need only explain "the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves." *Alonso*, 740 F.2d at 868 (quotation omitted).

Here, both the state and federal wiretap warrant applications described in detail how multiple conventional investigative techniques, including surveillance, subpoenas, interviews, undercover police officers, and trash pulls, had either been used or would be unhelpful in the future. Because the factual content of the applications is not in dispute, it appears the officers sufficiently exhausted non-wiretap methods of investigation, allowing them to obtain wiretap warrants under the state and federal wiretap statutes. *See Alonso*, 740 F.2d at 868; *Hudson*, 368 So. 2d at 902-03. Accordingly, the district court did not err in denying Pierre's motion to suppress evidence gathered as a result of the wiretaps.

## II.

Pierre next contends the evidence at trial was insufficient to establish his guilt for Count I. Specifically, Pierre contends the evidence at trial did not establish a conspiracy between him and Dixon, or between him and Polanco.

5

Rather, the evidence merely evinced a buyer-seller relationship. Pierre also argues the evidence established multiple conspiracies rather than a single one.[5]

We review *de novo* the sufficiency of the evidence to support a criminal conviction. *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010). In making this determination, "we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (quotation omitted).

"To support a conviction of conspiracy, the government must prove [1] that an agreement existed between two or more persons to commit a crime and [2] that the defendants knowingly and voluntarily joined or participated in the conspiracy." *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (quotation omitted). The existence of a conspiracy "may be proven by circumstantial evidence, including inferences from the conduct of the alleged

_____

[5]Pierre also appears to challenge the sufficiency of the evidence on Count 5. However, Pierre acknowledges in his brief that he possessed (with intent to distribute) more than 500 grams of cocaine, and trial testimony clearly established that fact. To the extent Pierre argues the jury must have found the total amount of cocaine attributed to him at sentencing, we have held that drug quantity need only be proven by a preponderance of the evidence at sentencing. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). Pierre does not argue the Government failed to prove the drug amounts by a preponderance of the evidence, and, thus, he has abandoned any claims to that effect. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2004) (holding that issues on appeal are deemed abandoned if not "fairly and plainly presented" to this Court).

participants or from circumstantial evidence of a scheme. ” *Id.* (quotation

omitted).

A. *Buyer-Seller Relationship*

A sale and purchase of drugs does not establish a conspiracy "[w]here the

buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no

prior or contemporaneous understanding exists between the two beyond the sales

agreement." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999)

(quotation omitted). However, a conspiracy "may be inferred when the evidence

shows a continuing relationship that results in the repeated transfer of illegal drugs

to the purchaser." *Id.* We have previously concluded that a conspiracy existed

between a seller and buyer where the buyer bought crack cocaine from the seller

on several occasions, where the seller sometimes fronted the cocaine to the buyer,

where both individuals arranged for a supplier to bring three kilograms of cocaine

to them, and where they divided that cocaine among themselves. *United States v.*

*Beasley*, 2 F.3d 1551, 1560-61 (11th Cir. 1993).

Regardless of whether a conspiracy was established between Pierre, Dixon

and the other small-time dealers, the Government presented sufficient evidence of

a conspiracy between Pierre and Polanco. According to Polanco's testimony,

Pierre bought increasingly large amounts of cocaine from Polanco, who fronted

the cocaine to Pierre on many, if not all, occasions. Furthermore, Polanco would go to some lengths to obtain the cocaine for Pierre. A reasonable jury could infer Polanco was Pierre's sole supplier, Pierre was Polanco's main purchaser, and they worked together to propagate their buying and selling operation. Evidence of such a strong relationship between the two was sufficient to establish a conspiracy to possess with the intent to distribute drugs. *See Beasley*, 2 F.3d at 1560-61; *see also United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009) ("[A]s is well-established in this Circuit, where there are repeated transactions buying and selling large quantities of illegal drugs, that is sufficient evidence that the participants were involved in a conspiracy to distribute those drugs in the market.").

B. *Multiple Conspiracies*

We will not reverse a conviction "because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material *and* [2] substantially prejudiced the defendant[]." *Brown*, 587 F.3d at 1092 (quotation omitted). In deciding whether any variance was material, "we view the evidence in a light most favorable to the government and inquire whether a reasonable jury could have determined beyond a reasonable

8

doubt that a single conspiracy existed." *Id.* To demonstrate substantial prejudice, a defendant must establish one of two prongs:

> 1) that the proof at trial differed so greatly from the charges that [he] was unfairly surprised and was unable to prepare an adequate defense; *or* 2) that there are so many defendants and separate conspiracies before the jury that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another.

*United States v. Richardson*, 532 F.3d 1279, 1286-87 (11th Cir. 2008) (quotation omitted).

"A 'hub-and-spoke' conspiracy occurs where "a central core of conspirators recruits separate groups of co-conspirators to carry out the various functions of the illegal enterprise." *United States v. Huff*, 609 F.3d 1240, 1243-44 (11th Cir. 2010) (quotation omitted). However, "where the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes." *Id.* at 1244 (quotation omitted).

Here, Count 1 of the indictment charged a single conspiracy, but the evidence at trial showed the existence of at least two conspiratorial groups: one including Dixon and other small-time drug dealers, and one including Polanco and the higher-level suppliers. Pierre acted as the "hub" between the two groups, buying the drugs from the suppliers and selling them to the distributors. Because

9

in this "hub-and-spoke" conspiracy, nothing, aside from Pierre, appears to have connected the Polanco "spoke" with the Dixon spoke, at least two conspiracies existed rather than a single one. *See Huff*, 609 F.3d at 1243-44.

This variance between the indictment and proof at trial does not warrant a reversal because Pierre failed to show substantial prejudice. Regarding the first prong of substantial prejudice, nothing suggests, and Pierre does not claim, that he was surprised or unable to prepare an adequate defense. The second prong would not apply here because Pierre was the hub of the conspiracy and the only defendant in the trial. *See Richardson*, 532 F.3d at 1287 (holding that the second prong of substantial prejudice was irrelevant because the defendant "was the hub of the conspiracy and was tried alone").

## III.

Lastly, Pierre raises various claims regarding his sentence. He first asserts that his post-arrest incriminating statements should have been excluded from his PSI because they were obtained in violation of *Miranda*[6] and their reliability was not established. Pierre further contends the district court erred in applying a two-level firearm increase under U.S.S.G. § 2D1.1(b)(1) because the Government presented no evidence at trial that he possessed a firearm. Pierre next claims the

---

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

court erred in applying a four-level role enhancement under U.S.S.G § 3B1.1(a) because the Government never established that he was a leader or organizer as defined by the Guidelines. Finally, Pierre contends the district court erred when it failed to consider his motion for a variance, in which he argued that imposing a life sentence would violate the Eighth Amendment's prohibition on cruel and unusual punishment.[7]

We review a district court's consideration of inadmissible evidence in sentencing de novo. *U.S. v. Nichols*, 438 F.3d 437, 439 (11th Cir. 2006). Further, we review the district court's factual findings related to the imposition of sentencing enhancements for clear error. *United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007). "This standard requires us to affirm a district court's findings of fact unless 'the record lacks substantial evidence' to support that determination." *Drew v. Dept. of Corrections*, 297 F.3d 1278, 1283 (11th Cir. 2002) (citation omitted). Lastly, "[w]e review for reasonableness the ultimate sentence a district court imposes on a defendant." *See U.S. v. Willis*, 560 F.3d

---

[7]Pierre also appears to challenge the district court's consideration of paragraphs 18 and 25 of the PSI on the sole ground that acquitted conduct may not be considered at sentencing. We have previously held that acquitted conduct may be considered at sentencing, provided the conduct is proved by a preponderance of the evidence. *See United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir. 2006). There was adequate evidence presented at Pierre's trial to meet this standard. Accordingly, the district court did not err in considering the acquitted conduct.

11

1246, 1250-51 (11th Cir. 2009) (denying a defendant's motion for a Guideline variance on reasonableness grounds).

A. *Post-Arrest Statements*

"A sentencing court may consider any information, (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *United States v. Baker*, 432 F.3d 1189, 1253 (11th Cir. 2005). We have held that the exclusionary rule did not apply to sentencing proceedings and evidence seized in violation of the Fourth Amendment could be introduced at sentencing as long as it was reliable. *United States v. Lynch*, 934 F.2d 1226, 1235-37 (11th Cir. 1991).

The district court did not err in considering Pierre's post-arrest statements at sentencing because there was no evidence that the statements were involuntary or unreliable. *See Lynch*, 934 F.2d at 1235-37. Pierre's statements showed only that he bought large quantities of cocaine from Polanco and sold some cocaine to Dixon and others. Because all of these actions were proved at trial, the inclusion of Pierre's own corroborating admissions did not affect the district court's sentence.

B. *The Two-Level Firearm Enhancement*

"When a defendant objects to a factual finding that is used in calculating his guideline sentence . . . the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *Id.* Section 2D1.1(b)(1) of the Guidelines provides for a two-level increase if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "To justify a firearms enhancement, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

At the sentencing hearing, Agent Tammy Roane of the Florida Department of Law Enforcement testified that Polanco told her that he saw Pierre with a gun during two drug transactions. Because the district court had broad discretion to believe Roane and Polanco, it did not clearly err in finding that Pierre qualified for the two-level firearm increase. *See Stallings*, 463 F.3d at 1220; *United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999) ("We accord great deference to the district court's credibility determinations.").

13

C.  *The Four-Level Role Adjustment*

Section 3B1.1 of the Guidelines provides a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  The Guidelines provide a three-level enhancement if "the defendant was a manager or supervisor (but not an organizer or leader)."  *Id.* § 3B1.1(b).[8]

The "mere status of a middleman or a distributor does not support enhancement under Section 3B1.1 for being a supervisor, manager, or leader. Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership."  *United States v. Yates*, 990 F.2d 1179, 1182-83 (11th Cir. 1993) (quoting *United States v. Brown*, 944 F.2d 1377, 1385 (7th Cir. 1991)).  We have upheld a three-level increase under U.S.S.G. § 3B1.1(b) where a defendant "fronted" cocaine to a codefendant, then accompanied the codefendant to a location where the codefendant sold the cocaine to another individual, and, when the sale was completed, the codefendant turned the money over to the defendant in payment for the cocaine.  *See United States v. Howard*, 923 F.2d 1500, 1502-03 (11th Cir. 1991).  We have also held

---

[8]Although the court applied a four-level role enhancement, we note that Pierre's offense level and Guideline range would remain the same regardless of whether the court applied a four-level or a three-level enhancement. His base offense level of 38, coupled with a 2-level and a 3-level increase would still yield a total offense level of 43 and a Guideline range of life.

14

that "evidence of fronting, *without more*, is insufficient to satisfy the management requirement." *United States v. Alred*, 144 F.3d 1405, 1422 (11th Cir. 1998) (quotation omitted).

As a preliminary matter, there is no dispute the criminal activity in this case involved five or more participants or was otherwise extensive. The evidence presented at trial and sentencing established more than mere fronting of cocaine between Pierre, Dixon, and the lower-level distributors. Based on the amount of drugs Pierre purchased from Polanco, and Pierre's communication with numerous individuals regarding the drugs, one could infer that Pierre was a major cocaine supplier in the area and played an influential role in the distribution of this drug. Accordingly, the district court did not clearly err in finding Pierre played a leadership role and qualified for a four-level enhancement.[9]

D. *Motion for a Sentencing Variance*

Lastly, the district court did not err when it refused to hear Pierre's untimely motion for a sentencing variance based on Eighth Amendment grounds. As Pierre

---

[9]Even if the evidence did not support Pierre having an organizational or leadership role in the conspiracy, the evidence did show he played a managerial or supervisory role warranting a three-level increase. *See Howard*, 923 F.2d at 1502-03. Accordingly, any error committed by the district court in applying a four-level rather than a three-level enhancement was harmless. *See United States v. Mejia-Giovani*, 416 F.3d 1323, 1327 (11th Cir. 2005) (stating that a sentencing error is harmless where "the error did not affect the sentence, or had but very slight effect").

15

acknowledged in his Brief, the motion "was in essence more of an alloc[u]tion that [he] ought not be sentenced to life."  The court did, in fact, allow Pierre and his counsel an opportunity to allocute and argue for a variance, which the court denied.  Furthermore, Pierre's motion lacked merit as *Graham v. Florida* does not apply to adult offenders such as Pierre.  *See Graham v. Florida*, 130 S. Ct. 2011, 2034 (2010) (holding that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."); *see also Harmelin v. Michigan*, 501 U.S. 957, 1002-09 (1991) (plurality opinion) (finding no Eighth Amendment violation where the defendant was sentenced to a mandatory term of life imprisonment without the possibility of parole for possessing more than 650 grams of cocaine).  Accordingly, we affirm Pierre's convictions and sentence.

**AFFIRMED.**

16