43 A.3d 1044

**Tyrone DAVIS**

v.

**STATE of Maryland.**

**No. 59, Sept. Term, 2011.**

Court of Appeals of Maryland.

May 2, 2012.

Randy Evan McDonald (McDaniel & Associates, P.A., Washington, D.C.), on brief, for petitioner.

Adrienne J. Lawrence (McGuireWoods LLP, Washington, D.C.), on brief, for petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

HARRELL, J.

Montgomery County law enforcement officers, situated at a "listening post" in Montgomery County, Maryland, and operating under an ex parte order issued by a judge of the Circuit Court for Montgomery County properly under the Maryland Wiretapping and Electronic Surveillance Act, intercepted a

mobile phone communication from a target mobile phone, caller, and receiver located in Virginia. Section 10–408(c) of the Maryland Code, Courts and Judicial Proceedings Article, permits a Maryland judge to enter an ex parte order authorizing the interception of "wire, oral, or electronic communications ... sent by a communication device anywhere within the State." As a result of the intercepted communication, the police seized from Petitioner, Tyrone Davis (the caller), controlled dangerous substances when he returned to his Maryland residence. Petitioner moved in the Circuit Court to suppress all evidence obtained by police through the asserted illegal search and seizure, on the basis that the wiretap order did not authorize interception of the extraterritorial communication and the court issuing the order could not authorize such an interception. The hearing judge denied the motion, citing federal case law defining the location of an "interception" as where the mobile communication was first intercepted or redirected *and* where it was first heard by law enforcement officers. On appeal, the Court of Special Appeals affirmed the denial of the motion.

Although, in a few aspects, Maryland's wiretapping statute is more protective of individual privacy rights than Title III of the Federal Omnibus Crime and Safe Streets Act of 1968 ("Title III"), generally the Maryland statute is an "offspring" of Title III. We have read analogous provisions in our statute to be in *pari materia* with Title III, as interpreted by federal courts. Because the Title III and Maryland wiretap statute definitions of "interception" are verbatim, we shall adopt here the federal gloss in determining the proper jurisdiction and scope for an ex parte wiretap order. Thus, as long as the "listening post" where the law enforcement officers first hear the intercepted communications is within the geographical jurisdiction of the court issuing the order, the interception is proper under the Maryland statute. Accordingly, we conclude that the motion to suppress evidence was denied properly by the Circuit Court for Montgomery County and, therefore, affirm the judgment of the Court of Special Appeals.

## I.  Factual and Legal Proceedings

The following was gleaned from the record of the suppression hearing.  On 8 September 2006, the State's Attorney for Montgomery County filed an ex parte application to intercept and record wire, oral, and electronic communications from Petitioner's mobile cell phone.  Petitioner lived in Silver Spring, Montgomery County, Maryland.  The application was supported by affidavits from a Montgomery County Police Department Detective and a Special Agent for the United States Drug Enforcement Agency, who were coordinating an ongoing investigation into the distribution of controlled dangerous substances within Montgomery County.  Petitioner was one of the targets of the investigation.  The affidavits contained evidence, gathered pursuant to wiretaps approved previously, evincing probable cause to believe that Davis was transporting controlled dangerous substances into Maryland from outside the state.  On the day the wiretap application pertinent to the present case was filed, Judge Ann Harrington of the Circuit Court issued an order approving the application. The order, on its face, allowed investigators to intercept Davis's mobile phone communications [1] and required T–Mobile (operator of the relevant mobile phone infrastructure) to provide position and caller identification information, without geographic limit.

On 11 September 2006, Montgomery County police (stationed at a covert location in Montgomery County) were monitoring the communications on Davis's mobile phone and overheard a call that, based on the officers' training and experience, indicated that Davis was approaching the Washington, D.C., area after a journey to Miami, Florida, and potentially transporting controlled dangerous substances into Maryland.  Approximately one hour after the call was inter-

---

**1.**  The order gave authority to intercept "telephonic communications, short message service text messaging, caller identification information, electronic photographs, electronic video, precise positioning information, and cellular tower location data ..." associated with the mobile phone number 757–358–15XX.  The phone was registered to Petitioner at a Hampton, Virginia, address.

cepted, two officers confronted Davis as he arrived at his residence in Montgomery County. The officers concocted a cover story, which they told Davis, that they believed that he matched the description of a suspect in a recently committed robbery and requested to search Davis, his vehicle, and a suitcase in the trunk of his car. During the search, the officers found over nine pounds of marijuana in the suitcase.[2] The officers did not arrest Davis at that time, purportedly to avoid disrupting the ongoing drug investigation.

On 22 October 2009, a grand jury indicted Davis for possessing marijuana on 11 September 2006, "in sufficient quantity to indicate reasonably under all circumstance an intent to distribute the controlled substance," in violation of Maryland Code (1957, 2002 Repl.Vol.), Criminal Law Article, § 5–602(2). Petitioner filed a pre-trial, omnibus motion, which included a request to suppress evidence obtained through an illegal search and seizure under Maryland Rule 2–252. Judge Michael Algeo of the Circuit Court presided over the suppression motion hearing on 8 April 2010.

At the hearing, Petitioner's trial counsel argued that the police violated Maryland Code (1957, 2006 Repl.Vol.) Courts & Judicial Proceedings Article, § 10–408(c)(3), by intercepting a call made from Davis's cell phone, registered to a Virginia address, to a recipient located in Virginia, while Davis also was in Virginia when the call was placed and during the entire communication. Judge Algeo reasoned that the definition of "intercept" was the same under the Maryland wiretap statute and Title III and that the federal court's interpretation of "intercept" in *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir.1992), that "the interception must also be considered to occur at the place where the redirected contents are first heard," should apply *in pari materia* to interpretation of the parallel Maryland statute. Judge Algeo concluded that

---

**2.** It is undisputed that Davis consented to the search of his person and vehicle; however, Davis maintained at the motion hearing that he did not consent to the search of the suitcase, where the drugs were found. Davis did not dispute that the suitcase belonged to him.

Davis's call was "intercepted" lawfully in Montgomery County, where the investigators first heard the mobile phone conversation and, therefore, denied Petitioner's motion to suppress the evidence seized by the police. At trial, Davis was convicted of violating Criminal Law Article, § 5–602(2) and sentenced to five years in prison.

Davis noted timely an appeal to the Court of Special Appeals. A panel of the intermediate appellate court, in *Davis v. State*, 199 Md.App. 273, 21 A.3d 181 (2011), affirmed. The intermediate appellate court concluded that the location of the mobile phone, the caller, or the recipient of the call were not material. The critical location in the analysis was where the "interception" occurred. *Davis*, 199 Md.App. at 287, 21 A.3d at 189. The panel held that

> interception ... may be at either or both of two places: 1) where the suspect phone which is the subject of the interception order is located, regardless of whether that phone is sending a message or receiving a message; and 2) where the police are located as the monitor and hear the intercepted message, to wit, the location of the "listening post." *Id.*

Because the Montgomery County police's "listening post" was located within Montgomery County, Maryland, the intermediate appellate court concluded that the interception of the communication from Davis's mobile phone, although associated physically with Virginia, was lawful. *Davis*, 199 Md.App. at 304, 21 A.3d at 199. Davis filed timely a petition for writ of certiorari, which we granted, *Davis v. State*, 421 Md. 557, 28 A.3d 644 (2011), to consider the question:

> Did the Court of Special Appeals err in affirming the trial court's decision denying Mr. Davis's motion to suppress derivative evidence seized by Montgomery County police after the police intercepted Mr. Davis's phone call from his Virginia phone, placed while he was in Virginia, to a Virginia phone line when the call's recipient was also in Virginia, in violation of the Maryland Wiretapping and Electronic Surveillance Act, Md.Code Ann. Cts. & Jud. Proc. § 10–401, et seq.?

As foretold earlier in this opinion, we conclude that interception of a wire, oral, or electronic communication, for the purposes of the Maryland wiretap statute, occurs where law enforcement officers capture or redirect first the contents of the communication overheard by the wiretap and where they heard originally the communication. Therefore, as long as the "listening post" was located within the territorial jurisdiction of the court issuing the ex parte wiretap order, neither the physical location of the mobile phone at the time the call was placed and during the communication or the recipient of the call are material. Accordingly, we affirm the judgment of the Court of Special Appeals that the Circuit Court for Montgomery County denied properly Petitioner's motion to suppress.

## II.  Standard of Review

When interpreting a statute, a court's goal is "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied. . . ." *Ray v. State*, 410 Md. 384, 404, 978 A.2d 736, 747 (2009) (quoting *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699, 708 (2008)). We approach the statutory interpretation process by looking first at the plain language of a statute, giving the words their natural and ordinary meaning. *Id.* (citing *Barbre*, 402 Md. at 172, 935 A.2d at 708). If the language is clear and unambiguous on its face, our inquiry ends ordinarily. *Id.* (citing *Barbre*, 402 Md. at 173, 935 A.2d at 708–09).

If, however, the language is ambiguous, we move on to examine the "legislative history, case law, statutory purpose, as well as the structure of the statute" to aid us in ascertaining the intent of the Legislature. *Ray*, 410 Md. at 405, 978 A.2d at 748 (citations omitted). When focusing on the relevant part of a statutory scheme, we attempt to harmonize the part with the whole, considering the "purpose, aim, or policy of the enacting body." *Id.* (citations omitted). When interpreting an ambiguous statute, we must reject any construction that would be illogical or nonsensical. *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302, 783

A.2d 667, 671 (2001) (citing *State v. Brantner,* 360 Md. 314, 322, 758 A.2d 84, 88–89 (2000)).

■■■■ Reviewing a trial court's disposition of a motion to suppress evidence, we view the evidence presented at the hearing, along with any reasonable inferences drawable therefrom, in a light most favorable to the prevailing party. *Bailey v. State,* 412 Md. 349, 363, 987 A.2d 72, 80 (2010) (citing *Crosby v. State,* 408 Md. 490, 504, 970 A.2d 894, 902 (2009); *Longshore v. State,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007)). The reviewing court defers to the fact-finding of the hearing court, unless the findings are clearly erroneous. *Id.* We apply, however, a non-deferential standard of review when making the ultimate legal determination as to whether the evidence was seized properly under the Fourth Amendment. *Williamson v. State,* 413 Md. 521, 532, 993 A.2d 626, 632 (2010).

### III. Discussion

In 1968, Congress enacted Title III, which provided minimum standards for the interception of oral, wire, and electronic communications during criminal investigations and prosecution. *Mustafa v. State,* 323 Md. 65, 69, 591 A.2d 481, 483 (1991). Title III was intended to balance privacy concerns and the public interest in effective criminal prosecutions. *Id.* (citing, among others, *United States v. Kahn,* 415 U.S. 143, 151, 94 S.Ct. 977, 982, 39 L.Ed.2d 225, 235 (1974)). Each state was required to enact a responsive statute that was at least as protective of private citizens' rights as Title III. *Id.* (citing *State v. Siegel,* 266 Md. 256, 271, 292 A.2d 86, 94 (1972)). In 1977, the Maryland Legislature responded by enacting the Wiretapping and Electronic Surveillance Law. 1977 Md. Laws 693. The Maryland wiretap statutory scheme begins with a general prohibition on intercepting willfully, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral or electronic communication." Cts. & Jud. Proc., § 10–402(a)(1). Intercept means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any

electronic, mechanical, or other device." Cts. & Jud. Proc., § 10–401(3).[3]

An exception to the general prohibition on interception was created to enable law enforcement investigators to capture evidence of certain enumerated crimes, including dealing in a controlled dangerous substance. Cts. & Jud. Proc., § 10–402(c)(2)(ii)(1)(L). In order to obtain evidence of the enumerated crimes, the "Attorney General, a State Prosecutor, or a State's Attorney may apply to a judge of competent jurisdiction, and the judge, in accordance with the provisions of § 10–408 ..., may grant an order authorizing the interception of wire, oral, or electronic communications...." Cts. & Jud. Proc., § 10–406(a).

To obtain an ex parte order authorizing a wiretap, a law enforcement officer must provide a judge (of competent jurisdiction) with a written application, upon oath or affirmation, that includes a "full and complete statement of facts" justifying the order, including: details about the offense that is being, or will be, committed; a particular description of the communication to be intercepted; a description of previous failed investigative procedures or an explanation as to why they are too dangerous to be used; the time period for interception; and a list of previous wiretap applications. Cts. & Jud. Proc., § 10–408(a)(1)(i)–(v). A judge may enter an ex parte order, upon receipt of the application, authorizing

> interception of wire, oral, or electronic communications *within the territorial jurisdiction permitted* under paragraphs (2) and (3) of this subsection, if the judge determines (i) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in § 10–406 of this subtitle; (ii) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception; (iii) Normal investigative procedures have been tried and have failed or reasonably appear to be

---

3. "Intercept" is defined identically in Title III. 18 U.S.C. § 2510(4) (2011).

unlikely to succeed if tried or to be too dangerous;.... Cts. & Jud. Proc., § 10–408(c)(1) (emphasis added).

An ex parte order "may authorize the interception of wire, oral, or electronic communications *only within the territorial jurisdiction of the court* in which the application was filed." Cts. & Jud. Proc., § 10–408(c)(2) (emphasis added). Section § 10–408(c)(3) expands on the physical jurisdiction aspect of the wiretap providing that an order may

> authorize the interception of communications received or sent by a communication device *anywhere within the State* so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed at the time of the interception. The application must allege that the offense being investigated may transpire in the jurisdiction of the court in which the application is filed. (Emphasis added.).

The provisions of § 10–408(c) relating to jurisdiction are the crux of the present case. Petitioner maintains that § 10–408(c)(3) allows Maryland law enforcement officers, operating under an ex parte order issued by a Maryland circuit court judge, to intercept communications only when the target "electronic, mechanical, or other device" is located within Maryland. Petitioner and his cell phone were located in Virginia when he initiated a call to a person, also situated in Virginia, and the Montgomery County Police intercepted the message pertinent to this case. Therefore, Petitioner contends the plain language of § 10–408(c)(3) renders the interception unlawful. Respondent, on the other hand, points us to assertedly relevant federal case law that holds that, so long as the interception of the mobile communication occurs within the geographical jurisdiction of the court that issued the order, the interception is valid. After a careful reading of the statute and the overall scheme, we conclude that the language of § 10–408(c) is subject to more than one reasonable interpretation, and, therefore, we must look to the relevant legislative history to ascertain the intent of the Legislature.

Section 10–408(c) was added to the Maryland wiretap statute in 1991. 1991 Md. Laws 285. The amendment was added to account for the development of cellular phone technology.[4] Floor Report, S.B. 153 (1991). Prior to 1991, an ex parte order for the interception of wire, oral, or electronic communications could be issued only for communications within the jurisdiction of a particular circuit court. *Id.* The new section obviated the need for law enforcement agents to obtain multiple ex parte orders for each jurisdiction where a mobile phone might be located and allowed them to apply for one ex parte order in the jurisdiction where the "base station" was located. *Id.* During a hearing on Senate Bill 153, the bill sponsor (Senator Murphy) emphasized the burden of multiple wiretap applications on law enforcement and the potential advantage this provided to drug traffickers by allowing them to "weav[e] in and out of counties and across one jurisdictional boundary after another within the state." Hearing Before the Judicial Proceedings Committee (30 Jan. 1991). This section of the wiretap statute was "intended to allow the law to keep pace with current technology." Bill Analysis, S.B. 153 (1991).

In 1993, the words "or a paging device" were added, following the phrase "a mobile phone," in § 10–408(c). 1993 Md. Laws 598. Later, in response to our holdings in *Perry v. State,* 357 Md. 37, 741 A.2d 1162 (1999), and *Mustafa,* 323 Md. at 65, 591 A.2d at 481, which held that communications intercepted in another state are inadmissible at trial if they would violate the Maryland wiretap statute had they been intercepted in Maryland, the Legislature added a provision to the statute allowing certain out-of-state interceptions. 2001 Md. Laws 370. The words "a mobile phone or a paging device" were replaced with "communication device" by the Maryland Security Protection Act of 2002. 2002 Md. Laws, ch. 100. This Act added also the phrase "within the state having jurisdiction over the offense under investigation" to the defini-

---

**4.** The type of cellular phones in use at the time of the amendment of the statute were car phones, rather than the ubiquitous portable mobile phones carried by most of society today.

tion of "judge of competent jurisdiction" in § 10–401(8). 2002 Md. Laws, ch. 100. Section 10–408(c)(4) was added also by the Security Protection Act of 2002, allowing a judge of competent jurisdiction to "authorize continued interception within the State, both within and outside the judge's jurisdiction, if the original interception occurred within the judge's jurisdiction." Although none of the legislative history speaks directly to the interception of communications emanating from an out-of-state source, it is clear that the statute has been evolving steadily, trying to keep pace with emerging technology.

In addition to this legislative history, relevant federal and state court opinions provide a persuasive approach for interpreting § 10–408 and applying it to the facts developed at the suppression hearing in the present case. As we have noted previously, Maryland's wiretap statutory scheme is an "offspring" of Title III. *State v. Bailey,* 289 Md. 143, 151, 422 A.2d 1021, 1026 (1980), *superceded by statute on other grounds in McNeil v. State,* 112 Md.App. 434, 685 A.2d 839 (1996); *see also Adams v. State,* 289 Md. 221, 223, 424 A.2d 344, 345 (1981) (stating that "Maryland's Wiretapping and Electronic Surveillance Law ... tracks extensively Title III ..."). Notwithstanding that, in some areas, Maryland's statute provides greater protections against wiretapping than does the federal scheme. *Miles v. State,* 365 Md. 488, 509, 781 A.2d 787, 799 (2001) (noting that Maryland law requires two-party consent versus one-party consent required under federal law). Despite these differences, "it is clear through both legislative history and case precedent that the federal wiretap statute ... served as the guiding light for the Maryland Act[; t]herefore, we read the acts in pari materia...." *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.,* 104 Md.App. 1, 32, 655 A.2d 1, 32 (1995), *rev'd on other grounds,* 342 Md. 363, 676 A.2d 65 (1996). Because of the similarities, we look to apt federal courts cases for persuasive guidance interpreting analogous provisions of the Maryland statute. *Adams v. State,* 43 Md.App. 528, 531, 406 A.2d 637, 639 (1979) (noting that both federal and state statutes define the terms "intercept" and

"electronic, mechanical, or other device" with the same language), *aff'd,* 289 Md. 221, 424 A.2d 344 (1980).

The provision in Title III analogous to § 10–408(c)(3) provides, in relevant part:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications *within the territorial jurisdiction of the court in which the judge is sitting* (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter [18 USCS § 2516];

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous ... 18 U.S.C. § 2518(3) (2011) (emphasis added).

The seminal federal case addressing where "interception" of a telephone call occurs under Title III is *United States v. Rodriguez,* 968 F.2d 130 (2d Cir.1992). In *Rodriguez,* the defendants were convicted, in the U.S. District Court for the Southern District of New York, of various charges relating to an ongoing crack-cocaine manufacturing and distribution ring, based, in part, on evidence gathered from a wiretap of a New Jersey phone. 968 F.2d at 134–35. At trial, defendants made a motion to suppress the wiretap evidence; the motion was denied. *Id.* On appeal, a new trial was sought because assertedly the Southern District of New York court did not have jurisdiction to authorize wiretaps on New Jersey phones and, therefore, the wiretap obtained illegally the evidence. *Rodri-*

*guez,* 968 F.2d at 135. As discussed *supra,* Title III author-
izes a judge to intercept wire, oral, or electronic communica-
tions "within the territorial jurisdiction of the court in which
the judge is sitting." *Id.* The appellate court in *Rodriguez*
concluded that because the definition of interception included
the "aural" acquisition of the contents of the call, the intercep-
tion occurs where the contents of the wiretap were captured
or redirected originally, as well as "the place where the
redirected contents are first heard." 968 F.2d at 136. The
listening post, where the calls were first heard by law enforce-
ment agents, was located in Manhattan, New York, within the
federal Southern District of New York; therefore, the appel-
late court determined that the admission of the wiretap evi-
dence at trial was proper. *Rodriguez,* 968 F.2d at 135.

Other federal courts followed the *Rodriguez* approach in
determining challenges to the propriety of the jurisdiction of
the issuing court by focusing on where the "interception"
occurred or, alternatively, by looking to where the calling or
receiving phones were located. *See United States v. Denman,*
100 F.3d 399, 403 (5th Cir.1996) (concluding that because
"interception includes both the location of a tapped telephone
and the original listening post," the trial court allowed proper-
ly evidence from a wiretap of a phone located in the Southern
District of Texas where the listening post was located in the
Eastern District of Texas and the wiretap order was issued by
the United States District Court for the Eastern District of
Texas); *United States v. Ramirez,* 112 F.3d 849, 851–53 (7th
Cir.1997) (upholding a wiretap order from the United States
District Court in the Western District of Wisconsin where the
listening post and tapped mobile phone were located in Minne-
sota, but the target of the investigation and the receiving
phone were located in the Western District of Wisconsin);
*United States v. Luong,* 471 F.3d 1107, 1110 (9th Cir.2006)
(affirming the trial court's admission of evidence gathered
under a wiretap order issued by the United States District
Court for the Northern District of California where the mobile
phone had an area code, billing address, and mobile service
provider associated with the Eastern District of California,

because the wiretapped communications were first heard at a listening post in San Francisco, within the Northern District of California); *United States v. North*, 2011 WL 653864, *4, 2010 U.S. Dist. LEXIS 141337, *13 (S.D.Miss.2011) (concluding that "[t]erritorial jurisdiction is tied to the place of interception," rather than the location where the investigation of criminal activity is occurring); *United States v. Burford*, 755 F.Supp. 607, 611 (S.D.N.Y.1991) (stating that the relevant inquiry for determining jurisdiction is where the interception occurs and in this case, although the phone was tapped in Maryland, the calls were routed to a government "wire room" in the Southern District of New York, where the wiretap order has issued).

State statutes similar to Title III have been interpreted consistently, relying on *Rodriguez*. *See United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir.1994) (defining "interception" under the Oklahoma Security of Communication Act as "the place where the contents of the communication are first heard by law enforcement officials," in accordance with federal court interpretations of the similarly worded Title III provision); *State v. McCormick*, 719 So.2d 1220, 1222 (Fla. App.1998) (rejecting a trial court's interpretation of the Florida wiretap statute that a Melbourne Police officer did not have jurisdiction to apply for and act on a wiretap order regarding mobile phone communications outside of Brevard County, Florida, because the " 'interception' of a cellular call occurs both at the location of the tapped telephone and at the site where law enforcement authorities hear and record the call"); *Kadoranian v. Bellingham Police Dep't*, 119 Wash.2d 178, 829 P.2d 1061, 1065 (1992) (concluding that interceptions "occur where made" and that the Washington Privacy statute allows wiretapping of communications made during calls to recipients outside of the state); *but see Castillo v. State*, 810 S.W.2d 180, 183 (Tex.Crim.App.1990) (concluding that the language of the Texas wiretap statute stating that "only the judge of competent jurisdiction for the administrative judicial district in which the proposed interception will be made may act on an application," established territorial restrictions and, therefore,

"interception" occurred where the wiretap was placed physically).

Petitioner maintains that none of the federal and state cases addresses the issue of interception of a wholly extraterritorial communication and the result in each case, discussed *supra*, and, moreover, were rooted in the national umbrella of federal court jurisdiction, vice states and state jurisdiction over its counties and municipalities. Recently, however, the United States District Court for the Southern District of California addressed the question of interception of wholly extraterritorial mobile communications in *United States v. Cosme*, 2011 WL 3740337, 2011 U.S. Dist. LEXIS 94742 (S.D.Cal.2011). In *Cosme*, defendants, members of something called the Fernando Sanchez Organization ("FSO"), were indicted by a grand jury for conspiring to conduct a pattern of racketeering activity and conspiring to distribute cocaine, marijuana, and methamphetamine. 2011 WL 3740337, at *1, 2011 U.S. Dist. LEXIS 94742, at *7–8. The indictment was supported by evidence gained through electronic surveillance of telephones used by defendants and co-conspirators. *Cosme*, 2011 WL 3740337, at *1, 2011 U.S. Dist. LEXIS 94742, at *8. The wiretap application was made by an Assistant United States Attorney to the United States District Court for the Southern District of California and was supported by allegations of an FBI agent investigating the drug trafficking and associated violent activities of FSO from Mexico into the San Diego area. *Cosme*, 2011 WL 3740337, at *1–2, 2011 U.S. Dist. LEXIS 94742, at *8–9. One defendant, joined by others, filed a motion to suppress evidence derived from wiretaps because they exceeded allegedly the jurisdiction of the authorizing court under Title III. *Cosme*, 2011 WL 3740337, at *8, 2011 U.S. Dist. LEXIS 94742, at *27. The FBI intercepted a defendant's communication "while he was using a cellular phone in Mexico to communicate with others located in Mexico for the entire duration of the conversation." *Cosme*, 2011 WL 3740337, at *8, 2011 U.S. Dist. LEXIS 94742, at *27.

The defendant argued that Title III did not authorize interception of communications initiated and received entirely

within another country. *Cosme*, 2011 WL 3740337, at *8, 2011 U.S. Dist. LEXIS 94742, at *28. The government conceded that Title III did not allow a court to authorize a wiretap in Mexico, but countered that no language in Title III "suggests that Congress limited the ability of a judge to authorize the interception of only those conversations which occur solely in the United States." *Cosme*, 2011 WL 3740337, at *8–9, 2011 U.S. Dist. LEXIS 94742, at *29. Relying on the definitions of "interception" in *Luong*, the District Court concluded that the record established conclusively that the intercepted communications were heard only by law enforcement officials in a "wire room" located within the Southern District of California and, therefore, all of the communications were "intercepted" within the jurisdiction of the court that issued the wiretap order. *Cosme*, 2011 WL 3740337, at *9–10, 2011 U.S. Dist. LEXIS 94742, at *32–33. The court noted that drug traffickers and violent offenders "are not exempted from the valid wiretap order by making their plans across the border" and denied the motion to suppress evidence obtained from the wiretap. *Cosme*, 2011 WL 3740337, at *10, 22–23, 2011 U.S. Dist. LEXIS 94742, at *33, 69.

Petitioner urges us to construe the phase "anywhere within the state" in § 10–408(c)(3) of the Maryland statute as modifying "a communication device." This narrow reading would require Maryland-based law enforcement officers, operating under an otherwise valid ex parte wiretap order, to shut down interception of mobile phone communications when the target phone enters another state or the District of Columbia. This would present an enormous logistical and technological challenge to law enforcement operators and, in cases where the subject of an investigation crosses back and forth over state or other boundary lines (as in a drug distribution operation in Montgomery County and/or the District of Columbia), the task may be impossible.[5] But this challenging burden alone does

---

5. It is impossible to know in advance of intercepting a mobile phone communication where the call will be initiated or the situs of the recipient of the call. Even while the phone call is unfolding, determi-

not shape our decision in this case. Rather, the legislative history of the Maryland wiretap statute and analogous federal case law lead us to a different result than that urged by Petitioner.[6]

██ The widespread use and highly mobile nature of cellular phones, especially in the circumstances of drug distribution rings, presents a unique challenge for courts in determining the proper jurisdiction for acting on applications for ex parte wiretap orders. We must determine what the Legislature was trying to regulate. We do so by looking at the entirety of the wiretap statute. The target of the statute is "interception"; therefore, critical to our interpretation of § 10–408(c) is the definition of "interception." Under § 10–401(3), the definition of interception is "the aural or other acquisition of the contents of any wire, electronic, or oral communication...." The common and generally most understood meaning of "aural" is "of or relating to the ear or to the sense of hearing." Webster's Ninth New Collegiate Dictionary 116 (1989). Because "interception" is the tipping point of the statute, it provides naturally the jurisdictional anchor for an ex parte order authorizing law enforcement officers to intercept wire, oral, or electronic communications. Where "interception" occurs and, therefore, where jurisdiction is con-

---

nation of the precise, real-time location of the phone may be very difficult. Clifford S. Fishman & Anne T. McKenna, *Wiretapping & Eavesdropping: Surveillance in the Internet Age* § 2:70, at 2–117 (3d ed.2008).

**6.** Respondent advances also the "rule of the last antecedent" as a basis for interpreting the phrase "anywhere in the State" as modifying "interception," rather than "communication device." *See Sullivan v. Dixon*, 280 Md. 444, 451, 373 A.2d 1245, 1249 (1977) (citing Southerland, *Statutes and Statutory Construction*, § 47.33 (4th ed. C. Sands 1973)) (recognizing generally a rule of statutory construction "that a qualifying clause ordinarily is confined to the immediately preceding word or phrase"). We decline Respondent's invitation. Statutory interpretation should not be guided simply by the application of fixed and immutable canons or rules, rather it should be also "a matter of analysis and judgment in each case." Melvin J. Sykes, *A Modest Proposal for a Change in Maryland's Statutes Quo*, 43 Md. L.Rev. 647, 666 (1984).

ferred, has been addressed by numerous federal courts, discussed *supra*. Because Maryland's wiretap statute defines "interception" to include aural acquisition of communication in the same way that Title III defines the term; we accept and apply the rationale employed in *Rodriguez* (followed by other courts), that interception occurs where the communications were first captured or redirected, as well as where they were first heard by law enforcement agencies.

The *Cosme* case, decided recently, involved an analogous circumstance to the case at hand. There, the United States District Court for the Southern District of California expanded the analysis undertaken initially in *Rodriguez*, and later in *Luong*, that the location of "interception" is the jurisdictional focus for a wiretap order, despite the fact that a mobile phone conversation was initiated and received within Mexico entirely. Thus, *Cosme* makes clear that the location of interception is the essential element of jurisdiction, rather than the notion of a national umbrella federal jurisdiction (when federal courts are concerned) being the animating force for the results reached under the Title III cases. Nevertheless, an ex parte order may be issued by a Maryland circuit court only if the application alleges "that the offense being investigated may transpire in the jurisdiction of the court in which the application is filed." Cts. & Jud. Proc., § 10–408(c)(3). Establishing the location of the alleged criminal activity under investigation places a necessary and reasonable constraint on applicants for ex parte wiretap orders.

Petitioner maintains that the wording of § 10–408(c)(3) restricts interception to communication devices only when they are located within Maryland. This interpretation is not in accordance with the intent of the Legislature. When the legislature added § 10–408(c)(3) to the statutory scheme, in addition to the geographically restrictive clause "within the State," the phrase "so as to permit the interception of the communications regardless of whether the mobile telephone is located physically within the jurisdiction of the court in which the application was filed ..." was added. The purpose of this phrase was to broaden a circuit court's authority and the

effectiveness of law enforcement investigators wiretapping mobile phones, without losing continuity due to jurisdictional constraints. This interpretation is supported by the legislative history of § 10–401(3)(c), which was designed to enhance the authority of judges issuing ex parte wiretap orders, rather than restricting their authority. In 1991, the sponsor of Senate Bill 193, which became eventually § 10–401(3)(c), testified that in "the midst of a drug epidemic," drug traffickers were exploiting the jurisdictional restrictions of the current wiretap laws which tied "the hands of police trying to apprehend drug traffickers and put them in prison." [7]

In the present case, the ex parte order was issued by the Circuit Court for Montgomery County, the county where the alleged drug distribution activities were occurring. The "listening post," where law enforcement officers first heard the communications intercepted from Petitioner's mobile phone, was located in a covert facility within Montgomery County. Although the Petitioner was situated in Virginia when he placed the call in question that facilitated the seizure of the marijuana and his ultimate arrest, and his call was received by a person also in Virginia, the communication was intercepted aurally by police detectives monitoring the "listening post" in Montgomery County. Therefore, the interception was lawful and the denial of the motion to suppress proper.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

BELL, C.J., and GREENE, J. dissent.

---

7. We rely on the testimony of the bill sponsor in determining the legislative intent; especially where there were minimal amendments to the bill introduced after that testimony. Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History,* 54 Md. L.Rev. 432, 445–46, 462 (1995) (stating that "sponsor testimony ... [is] likely to be especially reliable evidence of the purpose or goal underlying a statute [and, i]f a bill goes through the legislative process essentially unchanged, the court should give significant weight to the views of the sponsor").

BELL, C.J., dissenting, in which GREENE, J., joins.

Following the denial of his motion to suppress evidence he alleged was obtained by an illegal wiretap in violation of Maryland Code (1957, 2006 Repl.Vol., 2011 Supp.) § 10–408(c) of the Cts. & Jud. Proc. Article,[1] the petitioner, Tyrone Davis,

---

1.  Maryland Code (1957, 2006 Repl.Vol., 2011 Supp.) § 10–408(c) of the Cts. & Jud. Proc. Article, provides:

    **"Grounds for ex parte interception order**
    "(c)(1) Upon the application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral, or electronic communications within the territorial jurisdiction permitted under paragraphs (2) and (3) of this subsection, if the judge determines on the basis of the facts submitted by the applicant that:
    "(i) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in § 10–406 of this subtitle;
    "(ii) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception;
    "(iii) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and
    "(iv) There is probable cause for belief:
    "1.  That the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense, or are leased to, listed in the name of, or commonly used by this person in accordance with subsection (a)(1) of this section; or
    "2.  That the actions of the individual whose communications are to be intercepted could have the effect of thwarting an interception from a specified facility in accordance with subsection (a)(2) of this section.
    "(2) Except as provided in paragraphs (3) and (4) of this subsection, an ex parte order issued under paragraph (1) of this subsection may authorize the interception of wire, oral, or electronic communications only within the territorial jurisdiction of the court in which the application was filed.
    "(3) If an application for an ex parte order is made by the Attorney General, the State Prosecutor, or a State's Attorney, an order issued under paragraph (1) of this subsection may authorize the interception of communications received or sent by a communication device anywhere within the State so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed at the time of the interception. The application must allege that the offense being investigated may

was tried and convicted, in the Circuit Court for Montgomery County, of possessing "a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance," in violation of Maryland Code (2002, 2011 Supp.), § 5–602(2) of the Crim. Law Article. His challenge to the suppression ruling was rejected by the Court of Special Appeals. The majority affirms that decision. *Davis v. State,* op. at 214–15, 43 A.3d at 1046. Like the intermediate appellate court, *Davis v. State,* 199 Md.App. 273, 287, 21 A.3d 181, 189 (2011), it holds that § 10–408(c) permits law enforcement to intercept communications that occur outside the jurisdiction of the court that issued the order—communications that originate from a communication device registered and used in another State and are directed to another communication device, also out of State—as long as where the law enforcement officers first hear the intercepted communications, the "listening post," is within the issuing court's jurisdiction. *Davis,* op. at 218, 43 A.3d at 1048. I do not agree, and, therefore, dissent.

**I.**

The facts relevant to the resolution of this appeal are straightforward and undisputed. The petitioner, a resident of Silver Spring, Maryland, was the target of an investigation of the organized distribution of controlled substances within Montgomery County. Pursuant to that investigation, the State's Attorney for Montgomery County filed, in the Circuit Court for Montgomery County, an ex parte application to intercept and record wire, oral, and electronic communications from the petitioner's mobile cell phone, which was registered in Virginia. On the basis of the application and the supporting

---

transpire in the jurisdiction of the court in which the application is filed.

"(4) In accordance with this subsection, a judge of competent jurisdiction may authorize continued interception within the State, both within and outside the judge's jurisdiction, if the original interception occurred within the judge's jurisdiction."

affidavits, a judge of that court approved the application, executing an order authorizing interception, from the petitioner's mobile phone, of "telephonic communications, short message service text messaging, caller identification information, electronic photographs, electronic video, precise positioning information, and cellular tower location data" and requiring the petitioner's mobile service provider, T–Mobile, to provide position and caller identification information, without geographic limit. Thereafter, while stationed at a "listening post"—a covert location within the county, established for the purpose of monitoring the petitioner's communications—the Montgomery County Police overheard a telephone call, placed by the petitioner in Virginia, from his Virginia mobile phone, to a Virginia telephone line. On the basis of the information they thus received, believing that the petitioner was transporting dangerous substances from Miami, Florida into Maryland, the petitioner was confronted by the officers at his residence in Montgomery County, searched, resulting in the seizure of over nine pounds of marijuana from his suitcase and, eventually, arrested.

The petitioner's motion to suppress evidence was made pursuant to § 10–408(i)(1).[2]  He argued then, as he does now,

---

2.  § 10–408(i) states:

"**Motions to suppress by aggrieved persons**
"(i)(1) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this State or a political subdivision thereof, may move to suppress the contents of any intercepted wire, oral, or electronic communication, or evidence derived therefrom, on the grounds that:
"(i) The communication was unlawfully intercepted;
"(ii) The order of authorization under which it was intercepted is insufficient on its face, or was not obtained or issued in strict compliance with this subtitle; or
"(iii) The interception was not made in conformity with the order of authorization.
"(2) This motion shall be made in accordance with the Maryland Rules. If the motion is granted, the contents of the intercepted wire, oral, or electronic communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this subtitle. The judge, upon the filing of the motion by the aggrieved

that the wiretap order was obtained in violation of § 10–408(c)(3). That section, he maintains, is clear and unambiguous, and, by its plain language, does not authorize law enforcement officers, operating under an ex parte order issued by a Maryland circuit court judge, to intercept communications when the "electronic, mechanical, or other device" is located outside of this state. He concludes, since the petitioner's cell phone was registered to a Virginia address, and the entire intercepted communication took place while the petitioner was in Virginia, and was with a recipient who was located outside the state of Maryland, that the interception exceeded the permissible scope of the ex parte order and was, thus, impermissible.

The majority holds that "interception of a wire, oral, or electronic communication, for the purposes of the Maryland wiretap statute, occurs where law enforcement officers capture or redirect first the contents of the communication overheard by the wiretap and where they heard originally the communication." *Davis*, op. at 218, 43 A.3d at 1048. Therefore, it reasons, "as long as the 'listening post' was located within the territorial jurisdiction of the court issuing the ex parte wiretap order, neither the physical location of the mobile phone at the time the call was placed and during the communication or the recipient of the call are material." *Id.* at 218, 43 A.3d at 1048. To reach this result, the majority rejects, as it must, the petitioner's plain language argument and concludes that "the language of § 10–408(c) is subject to more than one reasonable interpretation," *id.* at 221, 43 A.3d at 1050. Nota-

---

person, in his discretion may make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

"(3) In addition to any other right to appeal, the State shall have the right to appeal from the denial of an application for an order of approval, if the prosecuting attorney shall certify to the judge or other official denying the application that the appeal is not taken for purposes of delay. The appeal shall be taken within 30 days after the date the order was entered and shall be diligently prosecuted."

bly, however, the majority does not provide an explanation for this conclusion, stating only that a reading of § 10–408(c) that construes the phrase, "anywhere within the state" as modifying the phrase, "a communication device," rather than the word, "interception," "would present an enormous logistical and technological challenge to law enforcement operators and, in cases where the subject of an investigation crosses back and forth over state or other boundary lines . . ., the task may be impossible." *Id.* at 228, 43 A.3d at 1054. As a result, it looks to the legislative history of the statute to ascertain the Legislature's intent. *Davis,* op. at 221–22, 43 A.3d at 1049–50.

Turning first to a consideration of the legislative purpose underlying the enactment of the Maryland Wiretapping and Electronic Surveillance Law, Md.Code. (1957, 2006 Repl.Vol.) §§ 10–401—10–414 of the Cts. & Jud. Proc. Article, *Davis,* op. at 219–20, 43 A.3d at 1048–49, the majority looks to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, passed by Congress in 1968 to "provide minimum standards for the interception of oral, wire, and electronic communications during criminal investigations and prosecution." *Id.* at 219, 43 A.3d at 1048. Noting that Title III permitted each state, in response, to enact a statute addressing the interception of such communications which would be at least as protective of individual rights as Title III, *Mustafa v. State,* 323 Md. 65, 69, 591 A.2d 481, 483 (1991), it found it significant that the Maryland wiretap statutory scheme was enacted, in 1977, in response to Title III. *Davis,* op. at 219–20, 43 A.3d at 1048–49. Then looking to the history of the Maryland Wiretap Act in an effort to determine the intent of the Legislature regarding the jurisdictional reach of an ex parte order under § 10–408(c), *id.* at 221–23, 43 A.3d at 1049–51, and finding no elucidation, in that regard, the majority reminds us that, notwithstanding the fact that the Maryland Act is more restrictive, in multiple places,[3] the Maryland Act

---

3. Section 10–408(f) of the Maryland Wiretap Act, for example, mandates that an ex parte order *"shall* require reports to be made to the

is an "offspring" of Title III, *id.* at 223, 43 A.3d at 1051, and, therefore, relies on this connection between the two statutory schemes, as well as similarities between the Maryland Act and Title III, to justify "look[ing] to apt federal courts cases [interpreting Title III] for persuasive guidance interpreting analogous provisions of the Maryland statute." Op. at 223, 43 A.3d at 1051.

From this overview of federal case law,[4] the majority concludes that Title III's grant of authority to a judge to "enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which

judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for interception," (emphasis added). The analogous federal provision, 18 U.S.C. § 2518(6), in contrast, simply states that such an order "*may* require reports to be made to the judge...." (Emphasis added). *See also State v. Baldwin,* 289 Md. 635, 641, 426 A.2d 916, 920 (1981).

Also, under 18 U.S.C. § 2511(2)(c), law enforcement may intercept a wire, oral, or electronic communication without a court order, provided prior consent has been granted by a party to the communication. Section 10–402(c)(2), on the other hand, only deems such one-party consent to be sufficient where a law enforcement officer or a person "acting at the prior direction and under the supervision of an investigative or law enforcement officer" seeks to intercept a wire, oral, or electronic communication to acquire evidence of the commission of certain enumerated crimes, including murder, kidnapping, and rape. If the law enforcement officer, or other person acting under color of law, is a party to the conversation, this satisfies the one-party consent requirement. § 10–402(c)(2)(ii). In all other circumstances, however, in the absence of any other exceptions set forth in the statute, it is unlawful for a person to intercept a communication unless "the person is a party to the communication and ... *all of the parties* have given prior consent to the interception ...." § 10–402(c)(3) (emphasis added). *See also Mustafa,* 323 Md. at 70, 591 A.2d at 483; Richard P. Gilbert, "A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law," 8 U. Balt. L.Rev. 183 (1979).

4. *United States v. Rodriguez,* 968 F.2d 130 (2d Cir.1992); *United States v. Denman,* 100 F.3d 399 (5th Cir.1996); *United States v. Ramirez,* 112 F.3d 849 (7th Cir.1997); *United States v. Luong,* 471 F.3d 1107 (9th Cir.2006); *United States v. North,* 2011 WL 653864, 2010 U.S. Dist. LEXIS 141337 (S.D.Miss.2011); *United States v. Burford,* 755 F.Supp. 607 (S.D.N.Y.1991), *United States v. Cosme,* 2011 WL 3740337, 2011 U.S. Dist. LEXIS 94742 (S.D.Cal.2011).

the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)" analogously allows state law enforcement officers, acting pursuant to an ex parte order issued under § 10–408, to intercept communications anywhere in the country as long as the "listening post" is located within this state. *Id.* at 228–29, 43 A.3d at 1054. The majority also concludes that, since "interception", as defined by § 10–408(c), and similar to Title III, refers to "the aural or other acquisition," or the hearing, "of the contents of any wire," the point of interception is where the contents of the communication are actually heard, that is, at the "listening post." *Id.* at 229–30, 43 A.3d at 1054–55.

I disagree. Section 10–408(c)(3) is clear and unambiguous. Its plain language requires that, for lawful interception to occur, the communication device from which the wire, oral or electronic communication is to be intercepted, must be within the state. Holding otherwise impermissibly expands the authority of a circuit court, pursuant to § 10–408(c)(3), to issue an order that, beyond the location of a "listening post," need not establish a connection, through the device wiretapped, between the party whose communication is being intercepted, and the state of Maryland, and has neither boundaries nor standards. Its reach could be anywhere in the United States and, indeed, the world. Furthermore, § 10–408(c)(3)'s legislative history confirms my construction. It demonstrates an intent to expand the statute's reach beyond a court's territorial boundary, to be sure, but only *within* the state, and not outside of it. The majority's reliance on Title III to interpret § 10–408(c)(3) is also misplaced, as that statutory scheme is considerably more expansive in its reach; it contemplates federal jurisdiction and, therefore, unlike state jurisdiction, requires that federal law enforcement be able to operate across state lines.

## II.

To determine the intended reach of the Maryland Wiretapping and Electronic Surveillance Act, Md.Code. (1957, 2006

Repl.Vol.) §§ 10–401–10–414 of the Cts. & Jud. Proc. Article, we are guided by the rules of statutory interpretation. We "begin[ ] with the plain language of the statute," and look to "ordinary, popular understanding of the English language [to] dictate[ ] interpretation of its terminology." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186, 193 (2005); *see also Khalifa v. State*, 382 Md. 400, 429, 855 A.2d 1175, 1191–92 (2004). It is important, in so doing, that we "neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). "If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written." *Kushell*, 385 Md. at 577, 870 A.2d at 193. Accordingly, "[i]f there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances . . ., we do not then need to resort to the various, and sometimes inconsistent, external rules of construction, for the Legislature is presumed to have meant what it said and said what it meant." *Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002)) (internal quotation marks omitted); *see also Stanley v. State*, 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005) (When a "statute is not ambiguous . . ., there is no reason to consult legislative history as an aid to construing it."); *Robey v. State*, 397 Md. 449, 454, 918 A.2d 499, 502 (2007) ("Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language.").

It is true, as the majority points out, *Davis*, op. at 219–20, 43 A.3d at 1048–49, that the Maryland Wiretap Act was enacted as a response to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521. The purpose of Title III was to provide "uniform minimum standards governing the interception and use of oral, wire, and electronic communications in connection with the prosecution

of certain criminal offenses." *Mustafa,* 323 Md. at 69, 591
A.2d at 483. The Act "prohibited the interception and use of
oral and wire communications unless obtained in strict con-
formity with the Act's provisions, which prescribed a uniform
minimum national standard governing the interception and
use of such communications in connection with a number of
designated criminal offenses." *Ricks v. State,* 312 Md. 11, 13–
14, 537 A.2d 612, 613 (1988). By its terms, it did not apply to
the states. Because each state had to pass an implementing
state law, which "may not be less but may be more restrictive
than the federal law," *Mustafa,* 323 Md. at 69, 591 A.2d at 483,
*see also,* 18 U.S.C. § 2516(2), the state of Maryland adopted
the Maryland Wiretap Act which, although it largely mirrored
the provisions of the federal law, was, in certain respects,
more restrictive, *supra,* note 3. *Mustafa,* 323 Md. at 69, 591
A.2d at 483; *Ricks,* 312 Md. at 15, 537 A.2d at 614.

As indicated, Title III contains a general prohibition against
the interception, "the aural or other acquisition of the contents
of any wire, electronic, or oral communication through the use
of any electronic, mechanical, or other device," 18 U.S.C.
§ 2510(4), and disclosure of wire, oral, or electronic communi-
cations. That portion of the Act, 18 U.S.C. § 2511, provides,
in relevant part:

"(1) Except as otherwise specifically provided in this chap-
ter any person who—

"(a) intentionally intercepts, endeavors to intercept, or
procures any other person to intercept or endeavor to
intercept, any wire, oral, or electronic communication;

"(b) intentionally uses, endeavors to use, or procures any
person to use or endeavor to use any electronic, mechani-
cal, or other device to intercept any oral communication
when—

"(i) such device is affixed to, or otherwise transmits a
signal through, a wire, cable, or other like connection
used in wire communication; or

"(ii) such device transmits communications by radio, or interferes with the transmission of such communication. . . .

            \*       \*       \*

"(c) intentionally discloses, or endeavors to disclose, to any person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

"(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection. . . ."

Moreover, "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding . . . if the disclosure of that information would be in violation of [the] chapter." 18 U.S.C. § 2515.

There is an exception to this general prohibition, however. 18 U.S.C. § 2516(1). That section allows the Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General to "authorize an application to a Federal judge of competent jurisdiction" for "an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of" certain designated offenses. Section 2518 prescribes the procedure for obtaining an ex parte order authorizing the interception of wire, oral, or electronic communications and the jurisdictional reach of such an order:

"(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication

under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application....

\* \* \*

"(3) Upon such application the judge may enter an ex parte order, *as requested or as modified,* authorizing or approving interception of wire, oral, or electronic communications *within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction),* if the judge determines on the basis of the facts submitted by the applicant that—

"(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 [*supra* ] of this chapter;

"(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

"(c) normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous...." (Emphasis added).

With regard to state authorities and state judges, 18 U.S.C. § 2516(2) provides:

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the

application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses."

Like Title III, the Maryland Act contains a general prohibition against "[w]illfully intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." § 10–402(a)(1). It also, again like Title III, defines "interception" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 10–401(3). The Maryland Act likewise contains exceptions to the general prohibition. Section 10–406(a) permits the Attorney General, State Prosecutor, or any State's Attorney to "apply to a judge of competent jurisdiction, and the judge, in accordance with the provisions of § 10–408 . . ., [to] grant an order authorizing the interception of wire, oral, or electronic communications by investigative or law enforcement officers when the interception may provide or has provided evidence of the commission of," among other crimes, "[d]ealing in a controlled dangerous substance."

The Maryland analog to § 2518 is § 10–408. That section prescribes the process by which the Attorney General, State Prosecutor, or a State's Attorney may obtain an ex parte interception order from a judge of competent jurisdiction and the jurisdictional reach of that order. Subsection (c)(1) delineates the showings required to be made by the applicant for an ex parte order, prerequisite to the issuance of such order. Upon those showings having been made, subsection (c)(2) provides that any ex parte order issued "may authorize the interception of wire, oral, or electronic communications only within the territorial jurisdiction of the court in which the

application was filed." Where, however, the application is filed by the Attorney General, the State Prosecutor, or, as in this case, a State's Attorney, the order may authorize communications made outside of the territorial jurisdiction of the issuing court to be intercepted, but only those "interception[s] of communications received or sent by a communication device anywhere within the State . . . ." § 10–408(c)(3). The General Assembly gave its reason for drawing that distinction:

"so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed at the time of the interception."

Subsection (c)(4) contains another exception, not relevant here, concerning the reach of the order after jurisdiction once has been established.

The petitioner's main contention is that § 10–408(c)(3) does not authorize the interception of wire, oral or electronic communications that are not received or sent by a communication device in this state. The Court of Special Appeals rejected this argument, believing that it required it "to look at what is now § 10–408(c)(3) in a vacuum." *Davis*, 199 Md.App. at 289, 21 A.3d at 190. It reasoned,

"the entitlement to intercept is indifferent to whether an inculpatory message is inbound from Macao or from Mt. Airy. . . .

. . . .

". . . The critical situs at which an interception occurs may be at either or both of two places: 1) where the suspect phone which is the subject of the interception order is located, regardless of whether that phone is sending a message or receiving a message; and 2) where the police are located as they monitor and hear the intercepted message, to wit, the location of the 'listening post.' The judge who issues the interception order must have jurisdictional authority over at least one of those two places as well as over the place where the crime has occurred and is to be prosecuted. The other end of the line, on the other hand,

wherever it may be, has nothing to do with the issue of jurisdiction. If the appellant were right that the location of the other end of the line had jurisdictional significance, we would dread to contemplate the implications of intercepting a conference call."

*Id.*, 199 Md.App. at 287, 21 A.3d at 189. The majority agrees with this position, and concludes,

"[b]ecause Maryland's wiretap statute defines "interception" to include aural acquisition of communication in the same way that Title III defines the term; we accept and apply the rationale employed in *Rodriguez* (followed by other courts), that interception occurs where the communications were first captured or redirected, as well as where they were first heard by law enforcement agencies."

*Davis*, Op. at 230, 43 A.3d at 1055. I disagree with the position of my colleagues on this Court, and the intermediate appellate court.

Section 10–408(c)(3) states:

"If an application for an ex parte order is made by the Attorney General, the State Prosecutor, or a State's Attorney, an order issued under paragraph (1) of this subsection may authorize the interception of communications received or sent by a communication device *anywhere within the State* so as to permit the interception of the communication regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed at the time of the interception."

(Emphasis added). This provision establishes a clear limit on the reach of an ex parte order authorizing interceptions of communications: only those communications that either are received or sent by a communication device "anywhere within the state" are covered. This is the only reasonable construction of this statute. The words, "within the State," must modify the immediately preceding words, "communication device," and *not*, contrary to what the majority believes, the words, "communications received or sent." *See Davis*, op. at 228–29, 43 A.3d at 1054. There are several reasons that this

is so. Section 10–408(c)(3) permits the interception of more than electronic communications, wire and oral communications are also subject to being intercepted. Thus, landlines, not simply mobile phones, are covered. Moreover, the intercept order requires that there be an object, a device, to be monitored for interceptable communications, through which the sought communications emanate and through which they are transmitted. The communication device, the phone, is that object; the communication is the product, the result; it does not, cannot, exist apart from the device. Thus, central to the ex parte order is the communication device, whose communications, in and out, are to be monitored. Without it, there could be no intercept order because there could be no interceptable communication.

The communication device is the critical element of § 10–408(c)(3), as well. It is the transmitter of the communications and the receptacle for the communications; the communications that may be intercepted are those that are "received or sent by a communication device." And, because of that intermediary role, "within the state" must delineate the requirement of the physical location of the communication device. It could not refer to the "listening post" since that is not the device being monitored and, thus, to which it was sent or received. It also is relevant that the communication device comes immediately after, and provides an explanation for, providing that the communication to be intercepted be to or from the communication device.

Where, as in the case *sub judice,* communications were neither sent from, nor received by, a communication device within the state, the interception of such communications is patently outside the coverage of § 10–408 and, thus, illegal. As to this, there is, and can be, no ambiguity.

The petitioner notes, and I agree, that § 10–408(c)(2) supports this construction. It reads:

"Except as provided in paragraphs (3) and (4) of this subsection, an ex parte order issued under paragraph (1) of this subsection may authorize the interception of wire, oral,

or electronic communications only *within the territorial jurisdiction of the court in which the application was filed.*" (Emphasis added). This section establishes an initial limitation on the reach of the ex parte order. "Territorial jurisdiction," as relevant here, is defined by BLACK'S LAW DICTIONARY, (9th Ed.2009), as the "[t]erritory over which a government, one of its courts, or one of its subdivisions has jurisdiction." In the state of Maryland, the "territorial jurisdiction" of a state circuit court is the county in which the court is located, or the city of Baltimore, if that is where the presiding judge is sitting. Md.Code. (1973, 2006 Repl.Vol., 2011 Supp.) §§ 1–501 & 1–503 of the Cts. & Jud. Proc. Article. Where, therefore, the application for an ex parte order is not made by the Attorney General, the State Prosecutor, or a State's Attorney, an ex parte order, issued by a circuit court, may authorize the interception of communications within the county or, as relevant, the city over which it has jurisdiction.

When § 10–408(c)(2) is read together with § 10–408(c)(3)'s provision that the ex parte order, if pursuant to an application filed by the Attorney General, the State Prosecutor, or a State's Attorney, may "authorize the interception of communications received or sent by a communication device *anywhere within the State . . . regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed,*" it becomes clear that the Legislature intended to expand the reach of the ex parte order, in that circumstance, beyond the territorial jurisdiction of a circuit court, but only within the State's borders.

The majority concludes that § 10–408(c)(3) is ambiguous. There is nothing in the language of § 10–408 to support that interpretation. Indeed, the majority's conclusion, in that regard, is as "forced," and "strained," *Kushell,* 385 Md. at 577, 870 A.2d at 193, as its conclusion on the merits, that § 10–408(c)(3) authorizes the interception of communications sent, in effect, from anywhere in the United States and, indeed, the world, as long as the law enforcement officers monitoring such communications are located in Maryland while doing so. Construing this statute to be ambiguous is possible only if the

significance of the communication device in the wiretap process is disregarded or undervalued, in favor of its product, the communication, and by reading the location modifier, "anywhere in this State", as applicable to the communication, rather than to the communication device. As to the latter, applying the modifier to the communication is grammatically incorrect.

Even if § 10–408(c)(3) were ambiguous and we were required to consult legislative history for guidance in discerning its meaning and the legislative intent in enacting it, my conclusion would be confirmed. There is sufficient indication in those portions of the legislative history upon which the majority relies, *Davis*, op. at 221–23, 43 A.3d at 1049–51, to establish that the Legislature intended to authorize interception of only those communications that take place within the state, that are "received or sent by a communication device anywhere within the state." That is what the summary of Senate Bill 153, the legislation responsible for the addition of § 10–408(c) to the Maryland Wiretap Act and, thus, the expansion of a circuit court's authority regarding ex parte orders, states:

> "This bill permits a State's Attorney to obtain an ex parte order authorizing the interception of communications sent or received by mobile telephone *anywhere in the state* regardless of where the mobile telephone is physically located at the time of interception regardless of the territorial jurisdiction of the court that issues the order."

*Davis*, 199 Md.App. at 290, 21 A.3d at 191 (2011) (emphasis added). It is consistent with the statute, as signed into law. Just as the statute does, the summary emphasizes, not just communications, but those "sent or received by mobile telephone anywhere in the state." The reference to the physical location of the phone merely recognizes that it could be anywhere in the state when the interception occurs; it need not be located in the jurisdiction of the issuing court.

Furthermore, the stated Background for Senate Bill 153 is to the same effect:

"Under current law, an ex parte order (an order granted at the request and for the benefit of one party only without giving notice to the adverse party or providing the adverse party with an opportunity to contest the order) authorizing the interception of wire, oral, or electronic communications may be issued only for communications within its territorial jurisdiction of the circuit court in which the application is filed. Therefore, to intercept communications on a mobile telephone, a separate order must be obtained from the circuit court in each jurisdiction in which the mobile telephone might be moved.

"This bill removes the need for obtaining multiple ex parte orders by providing for multijurisdictional wiretap orders from mobile telephones."

(Emphasis added). This Background makes the point even clearer. It demonstrates the reasoning behind the addition of subsection (c)(3), in the process recognizing explicitly that the location of the communication device is critical, for it is that which is the receptacle or transmitter of the communications subject to interception: "to intercept communications on a mobile telephone, a separate order must be obtained from the circuit court in each jurisdiction in which the mobile telephone might be moved."

As the majority, itself, notes, Senator Murphy, the sponsor of Senate Bill 153, stated, during a hearing on the Bill, that expanding the reach of ex parte orders issued by circuit court judges in those limited circumstances contemplated by subsection (c)(3) would allow law enforcement to better respond to drug trafficking problems by enabling them to "weav[e] in and out of *counties* and across one jurisdictional boundary after another *within the state.*" Hearing Before the Judicial Proceedings Committee (30 Jan. 1991) (emphasis added). This is yet another clear indication that the expansion sought by subsection (c)(3) was only intended to enhance law enforcement operations within the borders of Maryland. Had the Legislature intended Maryland ex parte orders to operate beyond the borders of the State, assuming it has that authority, it certainly should and could have said so. Indeed, as I

stated earlier, "the Legislature is presumed to have meant what it said and said what it meant." *Arundel Corp.*, 383 Md. at 502, 860 A.2d at 894.

Moreover, I believe the majority's reliance on Title III, as interpreted by federal courts, to be misplaced. So, too, is its "adopt[ion] [of] ... the federal gloss in determining the proper jurisdiction and scope for an ex parte wiretap order." *Id.* at 214, 43 A.3d at 1046.

It is true that the language of the Maryland Wiretap Act, not unexpectedly, closely tracks the language of Title III in a number of provisions; however, the majority overstates and overemphasizes this similarity. The similarities simply are not sufficiently overarching to justify interpreting the state statutory scheme in an identical manner as the federal act. In fact, in addition to "those minor respects in which the Maryland law is more restrictive than its federal counterpart," *Davis*, 199 Md.App. at 278, 21 A.3d at 184, Title III differs from its Maryland offspring in an extremely important respect: while, for jurisdictional purposes, Title III makes a clear distinction between interceptions of communications involving a landline and those involving a mobile phone, 18 U.S.C. § 2518(3), section 10–408(c)(3), does not.

In deferring to the interpretation, by the federal courts, of the federal statute as instructive, even dispositive, of the interpretation of the comparable Maryland statute, the majority is persuaded by the fact that both statutes define "intercept" in the exact same way. While true, there is a critical difference—the effect and consequence on jurisdiction of intercepting communication from mobile phones—that has significance to this case. Title III's definition of "intercept," today, includes electronic communication among those that may be acquired using the prescribed communication devices. § 2510(4). At its enactment, it encompassed only communications occurring over landlines; it did not cover electronic communications. Once Title III was amended to account for mobile telephones, Congress recognized the need to—and

did—change the jurisdictional effect on ex parte orders involving mobile phones.

The Maryland definition of "intercept" has a similar progression, which the Court of Special Appeals acknowledged and on which it commented:

> "Neither the original Title III nor the original Maryland Wiretapping Act ... covered communications between cellular phones. Such expanded coverage would not, indeed, follow until 1986 on the federal side, or until 1988 on the Maryland side. In *Bartnicki v. Vopper*, 532 U.S. 514, 524, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001), Justice Stevens described the time and the substance of the enhanced coverage:

>> 'As enacted in 1968, Title III did not apply to the monitoring of radio transmissions. In the Electronic Communications Privacy Act of 1986, 100 Stat. 1848, however, Congress enlarged the coverage of Title III to prohibit the interruption of "electronic" as well as oral and wire communications. By reason of that amendment, as well as a 1994 amendment which applied to cordless telephone communications, 100 Stat. 4279, Title III now applies to the interception of conversations over both cellular and cordless phones.'

> "Maryland followed the federal lead by enacting ch. 607 of the Acts of 1988. To the definitions in § 10–401, which already included "wire communication" and "oral communication," Maryland, again following Title III's example, added as § 10–401(11) a definition of "electronic communication":

>> '(11)(i) 'Electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system.'

> "Whereas § 10–402(a), the operational criminalizing provision, had originally only prohibited the interception of wire and oral communications, it now added, again following Title

III's example, "electronic communication" to the protective coverages:

'(a) Unlawful acts.—Except as otherwise specifically provided in this subtitle it is unlawful for any person to: (1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]'

"It was necessary to add 'electronic' to § 10–402(a) because a cellular communication is neither a 'wire communication' nor an 'oral communication' and, therefore, was not covered by the existing law. Although it did not do so until 1988, § 10–402 now clearly covers communications involving cellular phones. The law, as amended in 1988, therefore covers the present case."

*Davis,* 199 Md.App. at 285–86, 21 A.3d at 187–88 (emphasis omitted). Maryland, unlike Congress, did not carve out a jurisdictional niche for communications derived from mobile phones; it did not amend § 10–408(c)(3) for that purpose.

Neither the intermediate appellate court nor the majority addresses the difference between § 2518(3), specifically with regard to the distinction it draws, jurisdictionally, when the communications are obtained from the wiretapping of a mobile phone, and § 10–408(c)(3), which draws no such distinction. This is an important difference. In 1986, along with its inclusion of "electronic communications" in the language of Title III, Congress, in 18 U.S.C. § 2518(3), substituted "wire, oral, or electronic" for "wire or oral" and inserted, "(and outside that jurisdiction but within the United States *in the case of a mobile interception device authorized by a Federal court within such jurisdiction),*" Electronic Communications Privacy Act of 1986, Pub.L. 99–508 (emphasis added). This amendment accomplished two things: first, it created an exception to the general prohibition of § 2518(3), limiting interceptions to "communications within the territorial jurisdiction of the court in which the judge is sitting" by, second, authorizing interception across state lines, but *only* pursuant to an ex parte order issued by a Federal court, and of

communications sent or received by a mobile device. Section 2518(3), thus, authorizes the "aural ... acquisition," § 2510(4), of an "oral communication" or "wire communication," only within the territorial jurisdiction of the issuing court, while authorizing "aural ... acquisition" of an "electronic communication" involving a mobile device "within the United States." It makes sense, given the need to help law enforcement better perform their function, to allow greater latitude, albeit within the limits of the country's borders, in the case of mobile phones, while creating a jurisdictional anchor for landline communications.

In contrast, the Maryland Legislature, in amending § 10–401(3) and § 10–402 to include "electronic communications," did not amend § 10–408(c)(3) to draw such a jurisdictional distinction. Consequently, read as the majority does, § 10–408(c)(3) authorizes the interception of any communication— oral, wire and electronic, without geographic limit, occurring anywhere in the United States—or, as the majority opinion suggests, *Davis,* op. at 230–31, 43 A.3d at 1055–56, and certainly the Court of Special Appeals' opinion states, *Davis,* 199 Md.App. at 287, 21 A.3d at 189, anywhere in the world, as long as the law enforcement officers are located within the state. This reading of the statute is not only attenuated, it is unconstitutional under the Fourth Amendment. *See Katz v. United States,* 389 U.S. 347, 362, 88 S.Ct. 507, 517, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring) ("[R]easonable expectations of privacy may be defeated by electronic as well as physical invasion.").

The Maryland Wiretap statute was required, by Title III, to be at least as protective of individual rights as the federal act. *See United States v. Kahn,* 415 U.S. 143, 151, 94 S.Ct. 977, 982, 39 L.Ed.2d 225 (1974); *Mustafa,* 323 Md. at 69, 591 A.2d at 483; *see also* 18 U.S.C. § 2516(2). Indeed, we have recognized, in that regard, that "while Title III requires an appropriate state act before it can be effectuated, under no circumstances is that law enforceable if it is less restrictive than the federal statute so that it grants the governing power more rights at the expense of its citizens." *State v. Siegel,* 266 Md.

256, 271, 292 A.2d 86, 94 (1972). Interpreting § 10–408(c)(3) as the majority does violates that requirement. That interpretation permits a circuit court judge to issue, and a state law enforcement officer to execute, an order that authorizes the interception of the communications of *any* individual in the United States, or, as Judge Moylan states, in China, *Davis*, 199 Md.App. at 287, 21 A.3d at 189, whether, or not, the communication device being monitored and from which the communications emanate has any tangible connection to the state of Maryland. The only requirement, as this statute is construed, beyond the limits of form, content and probable cause set forth by the statute, is that the communication be heard by the investigating police officers in Maryland. This is not protective of individual rights and, if it were to any degree, it is far too tenuous to justify the level of infringement that it makes upon individual privacy.

Premised on § 2518(3) and the federal cases interpreting it, *see supra* note 4, the majority believes that its interpretation of § 10–408(c)(3) merely places Maryland on a par with the federal courts and, therefore, Maryland is no less protective of individual rights than are those courts. *Davis*, op. at 223–24, 43 A.3d at 1051. I do not agree. There is a real difference between State and federal jurisdiction.

It is a long standing principle, dating back to the common law, that a state's jurisdiction is limited to the confines of its own borders. *See St. Louis v. The Ferry Co.*, 78 U.S. 423, 430, 11 Wall. 423, 20 L.Ed. 192, 194 (1870) ("If the legislature of a State should enact that the citizens or property of another State or country should be taxed in the same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislative as to valid judicial action."); *State v. Knight*, 3 N.C. 109, 2 Hayw. (NC) 109 (1799) ("This state cannot declare that an act done in Virginia by a citizen of Virginia shall be criminal and punishable in this state: our penal laws can only extend to the limits of this state, except as

to our own citizens."); *see also* Joseph H. Beale, The Jurisdiction of a Sovereign State, 36 Harv. L.Rev. 241, 246 (1923). This broad principle of "territorial jurisdiction" has an impact in several contexts, with regard, for example, to one state's ability to criminalize conduct that occurred in another, or a state law enforcement officer's ability to pursue a criminal beyond the officer's state's borders or to make an arrest in a neighboring state without that state's express content. *See State v. Butler*, 353 Md. 67, 72–73, 724 A.2d 657, 660 (1999) ("Territorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory, which generally is within the boundaries of the respective states, may the case be tried in that state."). That principle applies with no less force in this context. Authorizing communications, which were received by communication devices and, therefore, disclosed, entirely outside the state from which the order emanates, to be intercepted by an order issued in that state is as violative of the permissible scope of state's jurisdiction as are the more traditional contexts. Judge Moylan's statement, that "the entitlement to intercept is indifferent to whether an inculpatory message is inbound from Macao or from Mt. Airy," *Davis*, 199 Md.App. at 287, 21 A.3d at 189, is, for the reasons I have stated, simply incorrect.

This is not to say that a state court may not exercise extra-territorial jurisdiction. It may, but, unless, I submit, expressly empowered by federal law, it must be in the context of, and limited to, the State. In fact, the Maryland judges have been authorized to exercise power outside the jurisdiction of their courts. The General Assembly relaxed the restrictions enumerated in § 2518(3) when it promulgated the Maryland Act, in particular, § 10–408(c)(3), but it did so by expanding the jurisdictional reach of ex parte orders issued by circuit court judges *only* in response to applications made by the Attorney General, the State Prosecutor or a State's Attorney. And, then, it limited, as I believe it had to, that expansion to the intra-state situation, appropriate, in any event, since the coun-

ty, where the circuit courts are based, is a unit of State government.

By contrast, federal district courts are units of the federal government. While, to be sure, they operate within jurisdictional boundaries, FED.R.CIV.P. 4, as do state courts, when authorized to act extra-territorially, it is logical that the authority would be defined, and limited by the governmental structure of which it is a part. That explains the extra-territorial feature of § 2518(3). As we have seen, in the case of mobile phones, the court is empowered to authorize interceptions co-extensive with federal jurisdiction, anywhere in the United States. Therefore, it does not follow that a state court acquires the same extra-territorial authority that a federal court does simply because the statutes under which they operate are similar. The governmental structure must be considered. In any case, when, as here, one of the statutes, the federal statute, also has a substantial distinguishing feature, i.e. the differentiation, for jurisdictional purposes, between the sources for the various communications permitted to be intercepted, that surely cannot be the case.

I am not persuaded that there is any, never mind sufficient, basis for the adoption of a "federal gloss" for the interpretation of § 10–408(c)(3). The primary case interpreting Title III, and more particularly, § 2518(3), on which the majority heavily relies, *Rodriguez*, 968 F.2d 130, is, I believe, consistent with my reading of this provision. Notably, *Rodriguez* dealt with the propriety of interstate wiretapping based on an order issued by a *federal* court in New York. *Id.*, 968 F.2d at 134. The court held that the interception of a communication that took place in New Jersey was proper. *Id.*, 968 F.2d at 135–36. That holding simply construed § 2518 and, arguably, did so correctly, given the facts and the statute involved.

As the petitioner notes, and I agree, the majority's reliance on judiciary interpretations of non-Maryland wiretap statutes, including those passed by other states [5] is misplaced, since

---

**5.** *United States v. Tavarez,* 40 F.3d 1136, 1138 (10th Cir.1994) (Oklahoma Security of Communication Act); *State v. McCormick,* 719 So.2d

none of the cases it mentions deals with communications that occur wholly outside the jurisdiction in question.[6] *Davis,* op. at 226–27, 43 A.3d at 1052–53.

I do not agree with the majority's interpretation of § 10–408(c) and, accordingly, I dissent.

Judge GREENE has authorized me to state that he joins in this dissenting opinion.

---

1220, 1222 (Fla.App.1998) (Florida Wiretap Statute); *Kadoranian v. Bellingham Police Dep't,* 119 Wash.2d 178, 829 P.2d 1061, 1065 (1992) (Washington Privacy Statute).

**6.** I am not persuaded by the reasoning of *United States v. Cosme,* 2011 WL 3740337, 2011 U.S. Dist. LEXIS 94742 (S.D.Cal.2011), on which the majority relies to justify its interpretation of the Maryland Act as authorizing interceptions of communications that occur wholly outside the state of Maryland. As I previously explain, *supra* at 255–56, 43 A.3d at 1069–70, there is a clear distinction between state and federal jurisdiction. It is important to note, therefore, that the ex parte order in *Cosme* was issued by a federal district court, pursuant to § 2518(3), *id.* at *1, 2011 U.S. Dist. LEXIS 94742 at *7. While that court, as we have seen, operates within jurisdictional boundaries as articulated in FED.R.CIV.P. 4, when authorized to act extra-territorially, as it is by § 2518(3), it may do so, as a unit of the federal government, within the limits of the United States.

Had the *Cosme* court held that it was proper to conduct a wiretap in Mexico, that case would be analogous to the majority's holding, *Davis,* op. at 214–15, 43 A.3d at 1046 and, as I see it, would amount to an equally impermissible expansion of jurisdiction. That is not what the *Cosme* court holds, however. 2011 WL 3740337 at *9–10, 2011 U.S. Dist. LEXIS 94742 at *32–33. Instead, relying on the Second Circuit's interpretation of "intercept," *Rodriguez,* 968 F.2d at 136, as defined by Title III, it concludes that the communication in question was, in fact, properly intercepted within the boundaries of the United States since "[t]he intercepted conversations ... were first heard and were only heard by law enforcement officials within the Southern District of California and all conversations were intercepted within the authority conferred by § 2518(3)." 2011 WL 3740337 at *10, 2011 U.S. Dist. LEXIS 94742 at *33. Thus, given the circumstances, it, like the other federal court interpretations of Title III upon which the majority rests its reasoning, is inapplicable to this case.